[Cite as *Hendricks v. Patton*, 2013-Ohio-2121.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE   COUNTY**

| | | |
|---|---|---|
| JAMES HENDRICKS, et al. | : | |
| | : | Appellate Case No. 2012-CA-58 |
| Plaintiff-Appellees | : | |
| | : | Trial Court Case No. CVF-1200584 |
| v. | : | |
| | : | |
| JAMES PATTON | : | (Civil Appeal from |
| | : | Fairborn Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 24th day of May, 2013.

· · · · · · · · · · ·

TIMOTHY R. RUDD, Atty. Reg. #0075490, Scott L. Braum & Associates, Ltd., 812 East Franklin Street, Suite C, Dayton, Ohio 45459
　　　　Attorney for Plaintiff-Appellees

JAMES PATTON, c/o Greene County Jail, 77 East Market Street, Xenia, OH 45385
　　　　Defendant-Appellant, *pro se*

· · · · · · · · · · · ·

HALL, J.

{¶ 1}　　James E. Patton appeals pro se from the trial court's entry of summary judgment against him on a breach-of-contract complaint filed by appellees James and Cynthia Hendricks.

{¶ 2}     The complaint alleged that Patton had breached a real-estate contract to purchase the appellees' home, thereby forfeiting a $5,000 earnest-money deposit. The Hendrickses moved for summary judgment on their complaint with supporting evidentiary materials. Patton opposed the motion with a pro se memorandum and unsworn, unauthenticated exhibits. He also filed what the trial court construed as a counterclaim seeking return of the earnest money. Based on the materials presented, the trial court denied the counterclaim, found the Hendrickses entitled to summary judgment, and awarded them the earnest money. This appeal followed.

{¶ 3}     Patton advances the following seven assignments of error, which he briefs and argues together:

Assignment of Error No. I: The trial court erred in granting summary judgment of James and Cynthia Hendricks. (Journal/Judgment Entry entered September 12, 2012 at 10:04 a.m.—referencing second page, 5th paragraph from top, first sentence).

Assignment of Error No. II: The trial court erred in granting summary judgment of James and Cynthia Hendricks by claiming that the Defendant-Appellant did not submit any affidavit or any other documentation as allowed under Civil Rule 56(C) which the court should have taken into consideration when reviewing the motion for summary judgment. (Reference, second page of Judge Root's Judgment Entry dated September 12, 2012 at 10:04, a.m., 4th paragraph from top).

Assignment of Error No. III: The trial court erred in granting summary judgment of James and Cynthia Hendricks by claiming that the

Defendant-Appellant did not or could not obtain financing, the parties reaffirmed the contract on January 23, 2012 in which the Defendant agreed to purchase the property with cash. (Referencing Judge Root's Judgment Entry dated September 12, 2012 at 10:04 a.m., third paragraph from top, first sentence).

Assignment of Error No. IV: The trial court erred in granting summary judgment of James and Cynthia Hendricks by claiming that the Defendant signed an addendum agreeing that all other terms and conditions previously agreed upon remain the same. (Referencing Judge Root's Judgment Entry dated September 12, 2012 at 10:04 a.m., second page, third paragraph, second sentence).

Assignment of Error No. V: The trial court erred in granting summary judgment of James and Cynthia Hendricks by finding that there was no genuine issue as to any material fact and that it appears from the evidence that conclusion is adverse to the Defendant. (Referencing 2nd page of Judge Root's Judgment Entry dated September 12, 2012 at 10:04 a.m., first paragraph).

Assignment of Error No. VI: The trial court erred in granting summary judgment of James and Cynthia Hendricks by finding that the plaintiffs fulfilled their obligation and the Defendant breached his obligation. (Referencing Judge Root's Judgment Entry dated September 12, 2012 at 10:04 a.m., 2nd page, third paragraph down from top, sentence three and four).

Assignment of Error No. VII: The trial court erred in granting summary judgment of James and Cynthia Hendricks by finding that the earnest money is owed to the Plaintiffs. (Referencing Judge Root's Judgment Entry dated

September 12, 2012 at 10:04 a.m., 2nd page, 3rd paragraph, 5th sentence).

(Appellant's brief at 2-3).

**{¶ 4}** The record reflects that Patton signed a real-estate contract to purchase the Hendrickses' home for $390,000. The Hendrickses' complaint alleged that Patton had deposited a $5,000 earnest-money check with Sibcy Cline. The complaint further alleged that the Hendrickses had fulfilled their obligations under the contract, that Patton had not fulfilled his obligations, and that the closing had not taken place. As a result, the Hendrickses alleged entitlement to the earnest money.

**{¶ 5}** The Hendrickses moved for summary judgment in July 2012. Their motion included an affidavit from James Hendricks, who averred:

1. I am a Plaintiff/Counter-Defendant in the above-captioned matter, and I am personally familiar with the facts and circumstances underlying this action and set forth in the application.

2. I submit this affidavit in support of the motion for summary judgment in favor of Plaintiffs/Counter-Defendants in the above-captioned matter.

3. I, along with my wife, owned the property at 2811 Stone Mill Place, Beavercreek, Ohio 45434 (the "Property").

4. In December 2011, my wife and I contracted with Jamey Patton, whereby Patton was to purchase the property from us for $390,000. *See*, Exhibit A.[1]

[1] Exhibit A is a signed copy of the Contract to Purchase Real Estate.

5. Pursuant to the terms of the Purchase Contract, Patton deposited a check [for] $5,000 earnest money with Sibcy Cline Realtors.

6. The earnest money check was returned for insufficient funds, and Patton subsequently deposited a cashier's check for $5,000 earnest money with Sibcy Cline Realtors.

7. When Patton either did not or could not obtain financing, the parties reaffirmed the contract in a January 23, 2012 addendum signed by Patton wherein he agreed to purchase the property with cash:

> "The undersigned Purchaser and Seller hereby agree to the following: The means of payment for this transaction shall be cash. All other terms and conditions previously agreed upon remain the same."

*See*, Exhibit B.[2]

8. My wife and I fulfilled all our obligations under the Purchase Contract, Patton has breached his obligations under the Purchase Contract, and the transaction contemplated thereby never took place.

(Doc. #25 at 1-2).

**{¶ 6}**    In opposition to the Hendrickses' motion, Patton wrote the trial court a letter. (Doc. #26). The trial court construed the letter as a memorandum opposing summary judgment. In the unsworn letter, Patton denied signing the January 23, 2012 addendum agreeing to purchase the property with cash. Although the addendum contained his apparent signature, Patton claimed he never had seen the document. In addition, he pointed out that the line on the addendum for a

---

[2] Exhibit B is a signed copy of the Addendum to Sales Agreement quoted in James Hendricks' affidavit.

witness signature was blank. Patton also argued that the Hendrickses cancelled the contract themselves, and began re-marketing their house, after his first earnest-money check was returned for insufficient funds. Therefore, he claimed no contract existed when he later provided Sibcy Cline with a $5,000 cashier's check. That being so, he argued he was entitled to have the $5,000 earnest-money cashier's check returned to him.

{¶ 7} After the Hendrickses filed a reply memorandum, Patton filed an amended response. It consisted of a personal letter to the trial court with unsworn, unauthenticated exhibits attached. (Doc. #32). Therein, he argued again that he never signed the addendum agreeing to a cash purchase and noted the absence of any witness signature. He also argued that he was in the process of obtaining financing when the Hendrickses cancelled the contract and re-listed their home. Patton additionally asserted that his presentation of the earnest-money check that bounced "voided" the contract but did not breach it. The unauthenticated exhibits attached to Patton's amended response included various print-outs of text messages, e-mails, and letters from a bank and insurance company.

{¶ 8} The trial court sustained the Hendrickses' summary judgment motion in a September 2012 entry. (Doc. #33). In support, it reasoned:

> The Court finds that there is no genuine issue as to any material fact, that Plaintiffs are entitled to judgment as a matter of law, and that it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the Defendant, that conclusion is adverse to the Defendant.

> The Court finds that on December 14, 2011 the Plaintiffs and Defendant

entered into an agreement for the purchase of the Plaintiff's property known as 2811 Stone Mill Place, Beavercreek, Ohio for the amount of $390,000. On January 14, 2012, the Defendant deposited a cashier's check in the amount of $5,000 as earnest money with Sibcy Cline Realtors.

When the Defendant did not or could not obtain financing, the parties reaffirmed the contract on January 23, 2012 in which the Defendant agreed to purchase the property with cash. Defendant signed an Addendum agreeing that all other terms and conditions previously agreed upon remained the same. The Plaintiffs fulfilled their obligations. However, the Defendant breached his obligation and the purchase transaction never took place. As a result, the earnest money is owed to the Plaintiffs pursuant to the terms of the agreement which states "If Purchaser defaults, Seller shall be entitled to the earnest money."

The Court notes that in making this finding of fact it relies upon the affidavit of James Hendricks. Defendant did not submit any affidavit or other documentation as allowed under Civ.R. 56(C) which this court could take into consideration when reviewing a motion for summary judgment.

Wherefore, plaintiff's Motion for Summary Judgment is hereby GRANTED. Judgment is hereby rendered in favor of Plaintiffs, JAMES HENDRICKS and CYNTHIA HENDRICKS, and against Defendant, JAMES (JAMEY) E. PATTON, in the amount of $5,000. As to Defendant's Counterclaim for the earnest money, the Court rules in favor of the Plaintiffs.

(Doc. #33 at 2).

**{¶ 9}** Following the trial court's ruling, Patton filed a timely notice of appeal. Therein, he claimed not to have known he needed to file an affidavit, noted that he did include exhibits with the letter he filed, claimed his signature on the addendum was forged, and professed to be at a disadvantage because he was incarcerated. Accompanying Patton's notice of appeal was an affidavit dated *after* the trial court's summary-judgment ruling. He averred that he was submitting the affidavit "in support of the <u>appeal</u> of Judgment Entry in the above captioned matter." (Emphasis sic.) (Doc. #35). He further averred: "* * * I have never seen the document identified as exhibit B in the plaintiff's motion for summary judgment nor have I ever signed this document the plaintiffs identify as 'Addendum to Sales Agreement,' dated January 23, 2012." (*Id.*).

**{¶ 10}** We review a grant of summary judgment de novo, which means "we apply the standards used by the trial court." *Brinkman v. Doughty*, 140 Ohio App.3d 494, 497, 748 N.E.2d 116 (2d Dist.2000). Summary judgment is appropriate when a trial court correctly finds "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.*" Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

**{¶ 11}** Although Patton raises seven assignments of error, they are briefed and argued together. Having reviewed his appellate brief, we discern two primary arguments. First, he asserts that the parties' contract was voided or cancelled, not breached, when his original earnest-money check bounced and the Hendrickses contemplated re-listing their house. Based on the premise

that no contract existed from that time forward, he maintains that he is entitled to the $5,000 cashiers check he subsequently provided. Second, he contends his signature was forged on the addendum that changed the transaction to an all-cash purchase. He also argues that the addendum lacked legal effect because no one signed it as a witness.

{¶ 12} Despite Patton's arguments, we believe the trial court properly entered summary judgment in favor of the Hendrickses. The parties signed the real-estate contract on December 14, 2011, and established a closing date of January 30, 2012.The contract obligated Patton to deposit $5,000 earnest money with Sibcy Cline. It also obligated him to obtain mortgage-loan approval within thirty days from the contract date. The contract did not make Patton's legal obligation to purchase the property contingent on obtaining financing. The financing-contingency provision was left blank. With regard to earnest money, the contract provided: "If the closing does not occur because of Seller's default or because any condition of this contract is not satisfied or waived, Purchaser shall be entitled to the earnest money. If Purchaser defaults, Seller shall be entitled to the earnest money." Finally, the contract provided that "[a]ny subsequent conditions, representations, warranties or agreements shall not be valid and binding upon the parties unless in writing signed by both parties."

{¶ 13} In his summary-judgment affidavit, James Hendricks averred that Patton's original earnest-money check had been returned for insufficient funds and that Patton had failed to obtain financing. Hendricks further averred that Patton subsequently deposited a $5,000 cashier's check with Sibcy Cline and that the parties signed a January 23, 2012 addendum agreeing to an all-cash transaction. Finally, Hendricks averred that he and his wife satisfied their obligations under the contract and that Patton breached his obligations insofar as he failed to

close on the house as agreed.

{¶ 14} In opposition to the Hendrickses' evidence, Patton relied on arguments contained in his unsworn letter to the trial court, which was treated as a memorandum opposing summary judgment. As noted above, he also provided the trial court with unsworn and unauthenticated exhibits including print-outs of text messages, e-mails, and letters from a bank and insurance company.[3]

{¶ 15} This court has recognized that an "unsworn memorandum" does not constitute proper Civ.R. 56(C) evidence. *Dane v. Kirsh*, 2d Dist. Montgomery No. 9069, 1985 WL 7865, *1 (March 20, 1985) ("A memorandum by counsel is not a method of presentation of evidence on a motion for or in opposition to a motion for summary judgment. Subsection (C) expressly provides that no evidence may be considered except such as is stated in the rule. Treating an unsworn memorandum of counsel as evidence is not authorized and would be a reckless method for determining a motion for summary judgment."). Nor do the unsworn and unauthenticated exhibits accompanying Patton's "amended response" constitute proper summary-judgment evidence. *See*, *e.g.*, *Huntington Nat. Bank v. Brown*, 2d Dist. Clark No. 2364, 1988 WL 37866, *2 (April 15, 1988) ("The unsworn letter sent by the Browns' attorney making further allegations about defects in the vehicle was submitted with the answer but has no evidentiary value in a motion for summary judgment. Since allegations of a defense taken alone are not sufficient to support the proposition that there was a question of material fact sufficient to quash the motion

---

[3] Although Patton has included his own affidavit with his notice of appeal, the affidavit was not part of the record before the trial court when it ruled against him and, therefore, it cannot be considered on appeal. *Compare State v. Winfrey*, 2d Dist. Montgomery No. 23174, 2010-Ohio-276, ¶12 (noting that the appellate rules do not allow consideration of an affidavit that was not part of the record before the trial court).

for summary judgment, the court below, construing the evidence before it most favorably for the Browns, properly granted summary judgment as a matter of law in favor of the Bank."). Therefore, the trial court correctly concluded that Patton "did not submit any affidavit or any other documentation as allowed under Civ.R. 56(C) which [it] could take into consideration when reviewing a motion for summary judgment."

{¶ 16} Even if we consider the exhibits upon which Patton relied below, they do not establish any error in the trial court's ruling. (*See* Exhibits attached to Doc. #32). The parties' contract provided for a closing no later than January 30, 2012. According to James Hendricks' affidavit, the parties agreed in writing to an all-cash deal on January 23, 2012 with all other contractual terms remaining the same. The first exhibit relied on by Patton below is a February 13, 2012 letter from a representative of Union Savings Bank. It appears to be a tentative preapproval for a mortgage. It has little significance, however, because it is dated three weeks after the addendum providing for an all-cash transaction and two weeks after the latest agreed-upon closing date. The next exhibit appears to be a letter from Patton's automobile insurance carrier advising him that his policy had been canceled due to a premium non-payment. This letter has nothing to do with the issues before us. The next several exhibits appear to be print-outs of text messages and e-mails between various people. They suggest that, as of February 2012, the Hendrickses were showing their house to other prospective buyers. Given Patton's failure to close as required by January 30, 2012, we see nothing improper about these showings. The exhibits also suggest that the Hendrickses were considering re-marketing the house as early as December 29, 2011, after Patton's first earnest-money check bounced and before he deposited the second one. We see nothing improper about preparing to mitigate damages by re-listing the

house after the first earnest-money check bounced. Finally, the exhibits include e-mail or text-message correspondence between Patton and his real-estate agent dated December 7, 2011. This correspondence, which pre-dated the formation of the contract at issue, has no bearing on the issues before us.

{¶ 17} With regard to the other arguments Patton raises on appeal, we are unpersuaded that the parties' contract was mutually voided or cancelled, not breached, when his original earnest-money check was returned for insufficient funds. The contract obligated Patton to deposit $5,000 earnest money with Sibcy Cline. If anything, the fact that his first earnest-money check bounced constituted a breach of that obligation. *Compare Spalla v. Fransen*, 188 Ohio App.3d 666, 2010-Ohio-3461, 936 N.E.2d 559, ¶37 (11th Dist.) ("Had Zuzolo timely disclosed to Spalla a lack of payment of earnest money by the buyer, Spalla could have declared the buyer in breach of the purchase agreement and made immediate efforts to collect the amount of $10,000 from her.").

{¶ 18} In any event, it is apparent that the parties reaffirmed the contract through the subsequent cash-sale addendum. We are unpersuaded by Patton's argument that his signature was forged on the addendum. In his summary-judgment affidavit, James Hendricks averred that the parties had signed the January 23, 2012 contract addendum, a copy of which was attached to his affidavit. (*See* Doc. #25 at Exh. B). On its face, the addendum contains what appears to be Patton's signature. To counter Hendricks' affidavit, Patton relied below on his unsworn denial that he had signed the addendum. But such an unsworn denial in a memorandum opposing summary judgment does not raise a genuine issue of material fact for trial. *Dane*, 1985 WL 7865 at *1.

{¶ 19} Nor are we persuaded by Patton's claim that the addendum lacked legal effect because it was not signed by a witness. The parties' contract only required subsequent modifications to be made in writing and signed by both parties. In compliance with this requirement, the addendum was in writing and it bore the parties' apparent signatures. We recognize that, by statute, certain types of documents pertaining to real estate may require a witness and acknowledgment. These include deeds, mortgages, leases, and land-contract sales. *See*, *e.g.*, *Hyest v. Humphrey*, 7th Dist. Belmont No. 1186, 1975 WL180644, *1 (Dec. 16, 1975), citing R.C. 5301.01. An ordinary contract for the sale of real estate does not fit within these categories. *Id.* Moreover, nothing in the statute of frauds required the parties' real-estate contract or addendum thereto to be witnessed. In this regard, R.C. 1335.04 provides: "No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law." Similarly, R.C. 1335.05 provides that a contract for the sale of land must be "in writing and signed by the party to be charged therewith[.]" Significantly, neither R.C. 1335.04 nor R.C. 1335.05 requires a real-estate contract or addendum thereto to be signed by a witness.[4]

---

[4] We recognize that in *Woodford v. Harrell*, 78 Ohio App.3d 216, 220, 604 N.E.2d 226 (10th Dist.1992), the Franklin County Court of Appeals stated, in dicta: "If we assume, arguendo, that a real estate purchase contract existed between appellant and appellees, that contract would be unenforceable for the reason that the Statute of Frauds (R.C. 1335.04) prohibits the enforcement of a contract to purchase real estate unless such agreement is reduced to writing, properly executed and witnessed." Notably, the actual holding in *Woodford* did not turn on the lack of a witness and, despite the *Woodford* court's assertion to the contrary, nothing in R.C. 1335.04 requires a real-estate purchase contract to be witnessed. In any event, we question whether the validity of the cash-sale addendum is a material issue in this case. Regardless of whether the parties contemplated Patton obtaining a mortgage or paying cash, the fact remains that he bounced the first earnest-money check and never closed the purchase as he had agreed to do.

**{¶ 20}** Based on our review of the record, we believe the trial court properly found the Hendrickses entitled to summary judgment on their breach-of-contract complaint seeking damages in the amount of Patton's $5,000 earnest-money deposit.

**{¶ 21}** Patton's assignments of error are overruled, and the judgment of the Greene County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.


Copies mailed to:

Timothy R. Rudd
James E. Patton
Hon. Beth W. Root