*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WATSON CARPET & FLOOR COVERING, INC.,
      *Plaintiff-Appellant/Cross-Appellee,*

    *v.*

MOHAWK INDUSTRIES, INC.,
           *Defendant-Appellee,*

CARPET DEN, INC.; RICK MCCORMICK,
    *Defendants-Appellees/Cross-Appellants.*

Nos. 09-6140/6173

>

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 09-00487—Thomas A. Wiseman, Jr., District Judge.

Argued: January 21, 2011

Decided and Filed: June 22, 2011

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** R. Scott Jackson, Jr., Nashville, Tennessee, for Appellant. Randall L. Allen, ALSTON & BIRD LLP, Atlanta, Georgia, Russell B. Morgan, BRADLEY ARANT BOULT CUMMINGS, LLP, Nashville, Tennessee, for Appellees. **ON BRIEF:** R. Scott Jackson, Jr., Nashville, Tennessee, for Appellant. Randall L. Allen, Rodney J. Ganske, ALSTON & BIRD LLP, Atlanta, Georgia, Russell B. Morgan, Paul A. Alexis, Christopher E. Thorsen, BRADLEY ARANT BOULT CUMMINGS, LLP, Nashville, Tennessee, Timothy L. Warnock, RILEY WARNOCK & JACOBSON, PLC, Nashville, Tennessee, for Appellees.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  Plaintiff-appellant Watson Carpet & Floor Covering, Inc. (Watson Carpet) is a carpet dealer in competition with Carpet Den, Inc. and its owner, Rick McCormick.  Watson Carpet sued Carpet Den, McCormick, and carpet supplier Mohawk Industries, Inc., for conspiring to restrain trade in violation of Section 1 of the Sherman Act.

Watson Carpet alleges that, in 1998, the defendants explicitly agreed to force Watson Carpet out of business by slandering and refusing to deal to Watson Carpet. After Mohawk refused to sell carpet to Watson Carpet the next year, Watson Carpet brought state claims in state court against all three defendants.  Carpet Den and McCormick settled the state-court action with Watson Carpet in March 2007, and Watson Carpet released all then-existing claims against those two defendants.  While the state-court litigation was ongoing in 2005 and 2006, and in May 2007 after the litigation had ended, Mohawk again refused to sell to Watson Carpet.  The 2005, 2006, and 2007 incidents form the basis of the present lawsuit.  Despite Watson Carpet's detailed allegations of an agreement to restrain trade, the district court dismissed the complaint for failure to state a claim, invoking the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Watson has appealed.  Carpet Den and McCormick have cross-appealed the district court's ruling that the settlement release did not cover the 2007 refusal to sell.

We **REVERSE** the dismissal of the complaint and hold that Watson Carpet adequately stated a claim for relief.  Watson Carpet specifically alleged both an agreement to restrain trade and later acts that furthered the conspiracy.  In response, Mohawk proffered alternative explanations for its refusals to sell to Watson Carpet. However, to survive a motion to dismiss, Watson Carpet needs to allege only that the

defendants' agreement *plausibly* explains the refusals to sell, not that the agreement is the *probable* or exclusive explanation.

With respect to the cross-appeal, we **AFFIRM** the district court's determination that the 2007 refusal to sell is outside the scope of the settlement release. When they settled with Watson Carpet, Carpet Den and McCormick bargained away their liability for the 1999, 2005, and 2006 refusals to sell. They did not withdraw from the conspiracy, however, and conspiracies are presumptively ongoing. As coconspirators with Mohawk, Carpet Den and McCormick remain liable for Mohawk's post-release actions that furthered the conspiracy, including the 2007 refusal to sell.

## I. BACKGROUND

According to the complaint, in 1998, McCormick met with Brad Matthaidess, Mohawk's Vice President and Senior Manager, and Fred Woods, a Mohawk sales representative. Mohawk is one of two suppliers that dominate 95% of Nashville's market for production-homebuilder carpet. Wielding that power, the men designed a plan to "run [Watson Carpet] out of business." R. 1 (Compl. ¶ 15).[1] To carry out the plan, Mohawk would refuse to sell to Watson Carpet. Meanwhile, McCormick, Carpet Den, and Woods "would maliciously make false derogatory accusations about [Watson Carpet and its owner] to Plaintiff's customers and potential customers and others in the industry." *Id.* at ¶ 16.

The complaint does not make clear when the defendants began to follow through on their plan, but between paragraphs about events in 1998 and 1999, Watson Carpet claims that McCormick and other Carpet Den and Mohawk agents made "false derogatory accusations" about the company to potential customers, with the goal of hurting Watson Carpet's business. *Id.* at ¶¶ 16–17. Their accusations included "that [Watson Carpet's owner] used drugs, sold drugs, cheated his customers, slept with his employees, had financial problems, had trouble with the IRS, and was in the mob." *Id.*

---

[1] We state the facts assuming, as we must, that the allegations in the complaint are true. *See Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009).

at ¶¶ 18–19. McCormick also "instructed his sales people that if they were competing with Plaintiff for a sale they should 'lowball' the price . . . to keep Plaintiff from getting the sale, even if it meant losing money on the sale." *Id.* at 20. In 1999, McCormick told the president of Turnberry Homes, Watson Carpet's client, that Watson Carpet had stolen money "by pocketing rebates . . . that should have been going to Turnberry Homes." *Id.* at ¶ 21. The attempt to undercut Watson Carpet's business did not succeed: the president of Turnberry Homes believed that McCormick's accusations were false, and the client continued to purchase from Watson Carpet.

Watson Carpet had less success that same year when it tried to purchase Portico carpet from Mohawk to supply Centex Homes. "Pursuant to and in furtherance of the conspiracy, Defendant Mohawk refused to sell Plaintiff the Portico carpet needed to service Centex," costing Watson Carpet the client, potential profits, and "almost" its own company. *Id.* at ¶ 22.

Although the complaint omits this fact, Watson Carpet sued Mohawk, Carpet Den, and McCormick in state court in 1999 for the Centex incident, alleging "tortious interference with business relationships and civil conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick, et al.*, 247 S.W.3d 169, 173 (Tenn. Ct. App. 2007). A jury found for Watson Carpet on both bases against all three defendants, awarding $1,384,180 in past damages and $249,314 in future damages. It also awarded $3,750,000 in punitive damages against Mohawk. On appeal, the Tennessee Court of Appeals reversed the judgment against Mohawk for tortious interference because Mohawk had a state-law supplier's privilege to make "decisions on what companies to deal with and what to sell them." *Id.* at 179. Relying on Mohawk's privilege, the Tennessee Court of Appeals also reversed for all defendants on the claim of conspiracy to interfere tortiously with Watson Carpet's prospective relationship with Centex. However, the court upheld the verdicts against Carpet Den and McCormick for tortiously interfering with Watson Carpet's relationship with Mohawk.

The Tennessee Court of Appeals issued its decision in January 2007. In March 2007, Carpet Den and McCormick settled with Watson Carpet. In exchange, Watson Carpet released the two defendants "from and against any and all claims . . . which [Watson Carpet] may have against them whether such claims are contingent or actual, anticipated or unanticipated, and of whatever kind or nature." Settlement at ¶ 1. Rather than settling, Mohawk sought review from the Tennessee Supreme Court, which denied permission to appeal.

During the course of the state-court litigation, Mohawk had refused to sell to Watson Carpet for Newmark Homes in 2005 and Pulte Homes in 2006. After the settlement, in May 2007, Mohawk refused to fill Watson Carpet's order for Wieland Homes. According to the complaint, all three refusals were "[p]ursuant to and in furtherance of the conspiracy." R. 1 (Compl. ¶¶ 32, 40, 48).

Watson Carpet sued the defendants in the United States District Court for the Middle District of Tennessee in May 2009, alleging three violations of Section 1 of the Sherman Act based on the 2005, 2006, and 2007 refusals to sell. Mohawk filed a motion to dismiss for failure to state a claim, asserting that the claims were time-barred and that the complaint was inadequate under *Twombly*. The district court granted the motion to dismiss, holding that the claims were not time barred, but that the complaint was inadequately particular about whether the 2005, 2006, and 2007 events were related to the original conspiracy or were unilateral refusals to sell to a litigious customer. Carpet Den and McCormick filed a motion for summary judgment or, alternatively, judgment on the pleadings due to the same statute-of-limitations argument that Mohawk raised, and also alleging that the settlement release barred the claims. The district court granted the motion for summary judgment insofar as the settlement release applied to the 2005 and 2006 counts. However, the district court concluded that the settlement release did not apply to the 2007 count, which took place after the parties had signed the release. The district court also determined that the 2007 count fell within the four-year statute of limitations. Nevertheless, as it had done with respect to Mohawk, the district court dismissed the 2007 count against Carpet Den and McCormick for failure to state a claim.

The district court denied a motion for reconsideration in which Watson Carpet claimed that the district court had wrongly required "reaffirm[ation of] the conspiracy." R. 48 (Dist. Ct. Order Denying Reconsideration) (internal quotation marks omitted). The district court clarified that it had "simply held that the Plaintiff failed to allege facts supporting its conclusory assertions that actions taken by [Mohawk] were related to or in furtherance of the conspiracy allegedly formed in 1998," or that Carpet Den or McCormick had taken "any actionable steps in furtherance of the alleged conspiracy after the date of the settlement agreement." *Id.*

Watson Carpet has appealed the dismissal of its claims. Carpet Den and McCormick have cross-appealed the district court's determination that the settlement agreement did not bar the 2007 count.

## II.  ANALYSIS

### A.  Whether the Complaint States a Plausible Claim for Relief

We review de novo motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009), *cert. denied*, *TAM Travel, Inc. v. Delta Airlines, Inc.*, 131 S. Ct. 896 (2011). We "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Id.* at 903 (internal quotation marks omitted). To survive a motion to dismiss, the "the complaint must contain either direct or inferential allegations respecting all material elements" of the offense. *Id.* (internal quotation marks omitted). "[T]he complaint's 'factual allegations must be enough to raise a right to relief above the speculative level,' and 'state a claim to relief that is plausible on its face.'" *Id.* (internal citations and alteration marks omitted) (quoting *Twombly*, 550 U.S. at 555, 570). "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* (internal quotation marks omitted).

Section 1 of the Sherman Act forbids conspiracies "in restraint of trade or commerce among the several States." 15 U.S.C. § 1. A Section 1 conspiracy requires more than a manufacturer's unilateral refusal to deal. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984). "There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently." *Id.* at 764. For example, in *Twombly*, the Supreme Court "[a]cknowledg[ed] that parallel conduct" between two businesses "was consistent with an unlawful agreement, [but] nevertheless concluded that it did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior." *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1950 (2009); *see Twombly*, 550 U.S. at 557. To plead unlawful agreement, a plaintiff may allege either an explicit agreement to restrain trade, or "sufficient circumstantial evidence tending to exclude the possibility of independent conduct." *In re Travel Agent*, 583 F.3d at 907 (listing four circumstantial "plus factors" that can demonstrate "concerted action"). Under either approach, the facts alleged must "plausibly suggest[]," rather than be "merely consistent with," an agreement to restrain trade in violation of the Sherman Act. *Id.* at 908.

Unlike the plaintiffs in *Twombly* and *In re Travel Agent*, Watson Carpet clearly has alleged an express agreement to restrain trade. The contentious issue, then, is whether the complaint adequately alleges that the refusals to sell carpet were undertaken as part of that agreement, or whether they were independent actions on Mohawk's part. We hold that the complaint sufficiently alleges a connection between the original agreement and the later refusals to sell.

Proof that the conspiracy was ongoing is unnecessary because conspiracies presumptively are ongoing until the participants achieve their objective. *United States v. Hayter Oil Co.*, 51 F.3d 1265, 1270–71 (6th Cir. 1995) (stating in a criminal Sherman Act § 1 case that, "once a conspiracy has been established, it is presumed to continue until there is an affirmative showing that it has been abandoned") (citing *United States v. Kissel*, 218 U.S. 601, 608 (1910)); *see also United States v. True*, 250 F.3d 410, 424

(6th Cir. 2001) (quoting *Hayter Oil*). *But see United States v. Therm-All, Inc.*, 373 F.3d 625, 635–36 (5th Cir.) (reading this language in *Hayter Oil* as unpersuasive dicta because other coconspirators admitted that they had committed overt acts within the statute-of-limitations period), *cert. denied*, 543 U.S. 1004 (2004). The cases supporting this rule are criminal ones about the affirmative defense of withdrawal from a conspiracy, but their logic is equally sensible in the civil context. *Cf. Chiropractic Coop. Ass'n of Mich. v. Am. Med. Ass'n*, 867 F.2d 270, 274–75 (6th Cir. 1989) (placing on civil defendants, like criminal defendants, the burden "to demonstrate withdrawal from the conspiracy"). Therefore, because conspiracies are presumptively ongoing, a plaintiff plausibly alleges that defendants acted *pursuant* to a conspiracy if the plaintiff alleges both (1) a conspiratorial agreement and (2) later actions that are consistent with the conspiracy.

We conclude that Watson Carpet's complaint plausibly alleges that the 2005, 2006, and 2007 refusals stemmed from Mohawk's 1998 agreement with Carpet Den. In each count alleged in its complaint, Watson Carpet asserts that Mohawk "refused to sell" carpet "[p]ursuant to and in furtherance of the conspiracy." R. 1 (Compl. ¶¶ 32, 40, 48). The defendants argue that the phrase "[p]ursuant to and in furtherance of the conspiracy" is a legal conclusion, which this court "need not accept as true," *In re Travel Agent*, 583 F.3d at 903. Similarly, the district court determined that Watson Carpet did not "point to any actual facts that support th[e] conclusory assertion" that the refusals to sell were pursuant to the 1998 conspiracy. R. 35 (Dist. Ct. Op. #1 at 11). There was, however, nothing more for Watson Carpet to plead. It articulated in detail the facts of the 1998 agreement. That the actions were taken *pursuant* to the plan is evident from the fact that the actions were the same ones contemplated as part of the plan. The agreement called for Mohawk to refuse to sell carpet, which is exactly what Mohawk allegedly did. A smoking gun—such as an email documenting that the conspiracy was ongoing—would aid Watson Carpet's case, but its absence does not render implausible that a business continued to adhere to the conspiratorial plan. The district court gave improper weight to the absence of reaffirmation. *See* R. 35 (Dist. Ct. Op. #1 at 11) ("Watson does not

allege the existence of any meetings between the parties or any overt acts giving rise to an inference that the parties reaffirmed the conspiracy at any time after 1998.").

The district court also found Watson Carpet's allegations inadequate because the state-court litigation itself was "an eminently plausible reason for the refusal to deal." R. 35 (Dist. Ct. Op. #1 at 11 (citing *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 889–90 (9th Cir. 1982), *cert. denied*, 460 U.S. 1085 (1983))). However, *Twombly* insists that pleadings be plausible, not probable. *Iqbal*, 129 S. Ct. at 1949 ("[T]he plausibility standard is not akin to a probability requirement."); *Twombly*, 550 U.S. at 556 (holding that plaintiffs can "proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely" (internal quotation marks omitted)). Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage. In this case, the plausibility of Watson Carpet's litigiousness as a reason for the refusals to sell carpet does not render all other reasons implausible.[2] In fact, the litigation arguably renders Watson Carpet's theory more plausible than if the parties had been incommunicado from 1998 to 2005. Whatever reasons Mohawk originally had to enter the agreement may have remained salient because of the state-court litigation or been exacerbated by the litigation.

The passage of time between an agreement and a defendant's later actions may affect the plausibility of an inference that the actions were connected to the agreement. *Cf. In re Travel Agent*, 583 F.3d at 911 (finding a statement made twenty-five years earlier "too remote in time to support a plausible inference of agreement" to restrain trade, although other factors influenced the determination as well). At the same time, it is not uncommon—and therefore not implausible—for antitrust conspiracies to last many years. *See, e.g.*, *United States v. Broce*, 488 U.S. 563, 580 (1989) (Stevens, J., concurring) (upholding guilty pleas to charges of a single, twenty-five year conspiracy "among Kansas highway contractors to rig bids" in violation of the Sherman Act); *In re*

---

[2]The same is true of Mohawk's argument that it might have refused to sell because Watson Carpet inadequately supported the homebuilders.

*Scrap Metal Antitrust Litig.*, 527 F.3d 517, 523–24 (6th Cir. 2008) (affirming a judgment for a class "consisting of all [industrial-scrap] generators who sold scrap metal to Defendants and/or their co-conspirators" during a period exceeding seven years because the defendants violated the Sherman Act by setting prices and rigging bids); *Amarel v. Connell*, 102 F.3d 1494, 1503 (9th Cir. 1997) (affirming Sherman Act liability for "a far-reaching, decades-long conspiracy" to shut down independent rice purchasers and mills); *Hayter Oil*, 51 F.3d at 1266 (affirming a conviction for a five-year "conspiracy to control retail gasoline prices"). Nothing about the parties' relationship in this case suggests that a conspiracy would have proceeded more rapidly. The seven years that elapsed between the defendants' alleged agreement and the 2005 refusal to sell certainly do not render Watson Carpet's claims implausible.

It is not necessary for us to consider Watson Carpet's argument that post-1998 facts confirmed the existence of a conspiracy. Because conspiracies are presumptively ongoing, the complaint plausibly alleges that Mohawk refused to sell to Watson Carpet in 2005, 2006, and 2007 as part of the original, ongoing conspiracy.

**B.    Whether the Settlement Release Barred the 2007 Claim against Carpet Den and McCormick**

"Although the denial of a motion for summary judgment is usually an interlocutory order that is not immediately appealable," we have jurisdiction to hear the appeal when it "is presented in tandem with a grant of summary judgment." *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, — F.3d —, 2011 WL 475186, at *4 (6th Cir. 2011) (en banc) (internal quotation marks omitted). "We review de novo denials of motions for summary judgment on purely legal grounds; we review for abuse of discretion denials based on the finding of a genuine issue of material fact." *Id.* (internal quotation marks omitted). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted).

Carpet Den and McCormick have cross-appealed the district court's determination—on purely legal grounds—that the settlement release did not bar the 2007 claim. Watson Carpet concedes that the release bars the 2005 and 2006 claims against these defendants. We hold that the release does not bar the 2007 claim.

In the 2007 Settlement Agreement and Release, Watson Carpet "forever release[d] and discharge[d] McCormick and Carpet Den . . . from and against any and all claims, rights, assertions, demands, damages, disputes, agreements, actions and causes of action, which it may have against them whether such claims are contingent or actual, anticipated or unanticipated, and of whatever kind or nature." Settlement at ¶ 1. The agreement is "governed by the laws of the State of Tennessee," *id.* at ¶ 11, which provide that "[a] general release . . . covers all claims between the parties which are in existence and within their contemplation at the time it is executed," *Sherman v. Am. Water Heater Co.*, 50 S.W.3d 455, 459 (Tenn. Ct. App. 2001). A general release prevents suits for damages that "might have been expected to result and were in fact caused" by pre-release actions. *Id.* However, a release "cannot operate prospectively so as to defeat an action which arises at a time []after" the parties sign the release. *Id.*

McCormick and Carpet Den argue that the release precludes Watson Carpet from using the 1998 agreement as part of any claim against these two defendants. Because the release applied to the same conspiracy that is at stake in the current lawsuit, these defendants conclude that it was not necessary for them to withdraw from the conspiracy to avoid liability for coconspirator Mohawk's post-release actions. This reasoning is faulty because it overlooks the difference between facts and claims. Although some of its predicate facts occurred before 2007, the 2007 *claim* did not exist at the time of the settlement. Because Watson Carpet was not injured from the 2007 refusal to sell until the refusal to sell occurred, the 2007 claim accrued after the parties signed the settlement and release. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) (holding that claims based on continuing conspiracies accrue each time "a defendant commits an act that injures a plaintiff's business"). Because Tennessee law prevents releases from operating prospectively, the release does not bar the 2007 claim.

Although a release could bar later claims if it also functioned as a withdrawal from the conspiracy, this particular release did not effectuate withdrawal. Defendants are liable for the acts of their coconspirators. *United States v. Brown*, 332 F.3d 363, 373–74 (6th Cir. 2003). "Affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators have generally been regarded as sufficient to establish withdrawal or abandonment," terminating liability for coconspirators' future conduct. *Chiropractic Coop. Ass'n of Mich.*, 867 F.2d at 274. McCormick and Carpet Den have not asserted that they communicated their settlement with Watson Carpet to Mohawk. More importantly, neither the settlement nor the release were inconsistent with the object of the conspiracy. McCormick and Carpet Den could have settled to limit their damages while still planning to drive Watson Carpet out of business. Shrewd conspirators may not pursue conspiratorial objectives with impunity simply by settling early in the conspiracy. Because this settlement did not effectuate withdrawal, McCormick and Carpet Den remain liable for Mohawk's post-release conduct, including its 2007 refusal to sell.

To support their contrary position, McCormick and Carpet Den point us to *MCM Partners v. Andrews-Bartlett & Assocs., Inc.*, 161 F.3d 443 (7th Cir. 1998). In that case, the Seventh Circuit affirmed summary judgment against plaintiffs who had signed a release before they brought a claim under the Sherman Act. The Seventh Circuit held that the plaintiffs' claims were "clearly based on pre-[release] conduct," so the suit was "expressly barred." *Id.* at 448. Watson Carpet responds that the defendant's post-release conduct in *MCM Partners* was "'a mere absence of dealing'" as opposed to an affirmative refusal to deal based on "'some specific act or word precluding'" a deal. Reply Br. at 27 (quoting *Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 117, 128–29 (5th Cir. 1975)). If Watson Carpet's interpretation is correct, then the claims in *MCM Partners* would have accrued before the parties signed the release, unlike the 2007 claim in this case. In turn, the defendants claim that the district court opinion in *MCM Partners* documents a post-release affirmative refusal to deal. From our vantage point, the facts of *MCM Partners* are unclear. *Compare MCM Partners, Inc. v. Andrews-*

*Bartlett Assocs., Inc.*, No. 92-C-5641, 1997 WL 306577, at *9 (N.D. Ill. May 29, 1997) (stating that the defendant "refused to meet with [the plaintiff's owner] or to rent equipment from [the plaintiff]" but not explaining what actions the plaintiff took), *with MCM Partners*, 161 F.3d at 446 (stating simply that the defendant "did not rent any additional equipment from" the plaintiff). The Seventh Circuit offered too little reasoning on the issue for its conclusion to persuade us.

We hold that a mid-conspiracy settlement does not preclude liability for a coconspirator's subsequent actions that further the conspiracy. Because McCormick and Carpet Den limited their liability without withdrawing from the conspiracy, the settlement release does not prevent Watson Carpet from holding them liable for Mohawk's 2007 refusal to sell, should the evidence support the allegations that Watson Carpet has pleaded regarding Mohawk's conduct.

## III.  CONCLUSION

Watson Carpet has plausibly and specifically alleged an agreement in 1998 to restrain trade as well as acts consistent with that agreement—refusals by Mohawk to sell carpet—in 2005, 2006, and 2007. Litigation between the parties might account for Mohawk's refusals to sell to Watson Carpet, but it is also plausible that the agreement was the reason for Mohawk's refusals. Thus, we **REVERSE** the district court's dismissal for failure to state a claim under *Twombly* and **REMAND** for further proceedings consistent with this opinion.

We **AFFIRM** the district court's determination that the 2007 claim against McCormick and Carpet Den was not barred by the prior settlement release because those defendants limited their liability for the earlier conspiratorial acts but they did not withdraw from the conspiracy.