In re Doreen **BODRICK**, Debtor.

Doreen Bodrick, Plaintiff,

v.

Chase Home Finance, Inc., Defendant.

Bankruptcy No. 07–42377.
Adversary No. 13–4057.

United States Bankruptcy Court,
N.D. Ohio.

Oct. 8, 2013.

Philip D. Zuzolo, Zuzolo Law Offices, LLC, Niles, OH, Plaintiff.

John C. Allerding, Thompson Hine LLP, Cleveland, OH, Defendant.

## MEMORANDUM OPINION REGARDING MOTION TO DISMISS COMPLAINT

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on Motion to Dismiss Complaint (Doc. # 9) filed by Defendant JP Morgan Chase Bank, National Association, successor by merger to Chase Home Finance, LLC ("Chase"), on August 15, 2013. Debtor/Plaintiff Doreen Bodrick ("Debtor") filed Memorandum in Opposition to Defendant's Motion to Dismiss Summary of Argument [sic] ("Memo

in Opposition") (Doc. # 16) on September 23, 2013. On October 3, 2013, Chase belatedly filed Reply in Support of Motion to Dismiss Complaint ("Reply") (Doc. # 17).[1]

The Motion to Dismiss seeks dismissal of Complaint for Violation of the Automatic Stay ("Complaint") (Doc. # 1) on the basis that the Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general orders of reference (Gen. Order Nos. 84 and 2012–7) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. STANDARD OF REVIEW FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), allows a defendant to move for dismissal of a complaint that fails "to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6) (West 2013). The motion to dismiss will be denied if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility

---

1. Local Rule 9013–1(c) states, "Subject to Fed. R. Bankr.P. 9006(f), a reply may be filed within 7 days after the date of service shown on the certificate of service of the response." LBR 9013–1(c) (2011). The certificate of service on the Memo in Opposition states that it was served electronically on September 23,

2013. Accordingly, any reply was due no later than September 30, 2013. Federal Rule of Bankruptcy Procedure 9006(f) does not enlarge the time for Chase to file the Reply because service of the Memo in Opposition was not accomplished by mail.

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Thus, "to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir.2007) (citation omitted).

When evaluating a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009) (quotation marks and citation omitted). However, "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (quotations marks and citation omitted).

Accordingly, for purposes of determining this Motion to Dismiss, the Court accepts all facts pled in the Complaint as true.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Debtor filed a voluntary petition pursuant to chapter 13 of Title 11 of the United States Code on September 25, 2007, which was denominated Case No. 07–42377 ("Main Case"). That same day, she filed her chapter 13 plan ("Plan") (Main Case Doc. # 2), which was confirmed on December 3, 2007 when the Court entered Order Confirming Plan ("Confirmation Order") (Main Case Doc. # 19). With respect to the Debtor's note and mortgage on her residence (collectively "Mortgage"), the Plan provided for (i) the chapter 13 trustee ("Trustee") to pay the default claim to "Washington Mutual"; and (ii) the Debtor to pay the ongoing Mortgage payments directly to "Washington Mutual." (Plan ¶¶ 5–6.)

On October 17, 2007, Washington Mutual Bank, as Servicer for Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006 WL–1 ("Washington Mutual"), filed a proof of claim, denominated Claim No. 4–1, in the secured amount of $131,937.25, with an arrearage amount of $6,560.34. Washington Mutual filed amended Claim No. 4–2 on March 10, 2008, asserting a secured claim in the total amount of $131,781.24, with an arrearage claim of $6,404.33. Claim No. 4 was amended yet again on March 25, 2008 (Claim No. 4–3) to assert a total secured claim of $132,506.24, with an arrearage claim of $7,129.33.[2] Transfer of Claim Other Than for Security (Main Case Doc. # 44) was filed on May 6, 2011, which stated that Claim No. 4 was transferred from Washington Mutual to Chase.

On April 29, 2008, Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006–WL 1 ("Deutsche Bank") filed a proof of claim, denominated Claim No. 15–1 ("Claim No. 15"), in the secured amount of $3,376.01 for "supplemental arrears." Washington Mutual Mortgage[3] is listed as the party and address where payment should be

---

2. Unless otherwise stated, the Court will refer to Claim Nos. 4–1, 4–2 and 4–3 as Claim No. 4.

3. In Claim No. 4 and Claim No. 15, respectively, Washington Mutual Bank and Washington Mutual Mortgage have the same address in Jacksonville, Florida, but it is not clear if they are the same or different entities.

sent. Nothing on the docket indicates that Claim No. 15 was ever transferred.

On September 17, 2012, the Trustee filed Notice of Final Cure Payment on Residential Mortgage ("Final Cure Notice") regarding Claim No. 15–1 (Main Case Doc. # 64), which stated that Claim No. 15–1 filed by Washington Mutual Mortgage in the amount of $3,376.01 had been paid in full. That same day, the Trustee filed Final Cure Notice (Main Case Doc. # 65) stating that Claim No. 4–3 filed by Chase in the amount of $7,129.33 had been paid in full. Both Final Cure Notices were filed pursuant to Federal Rule of Bankruptcy Procedure 3002.1(f).

On October 3, 2012, Deutsche Bank filed Response to Notices of Final Cure Payment on Residential Mortgage (Claim Nos. 4, 15) ("Cure Response") (Main Case Doc. Oct. 3, 2012), which stated that Deutsche Bank (i) agrees Claim No. 4–3 has been paid in full; (ii) agrees Claim No. 15–1 had been paid in full; but (iii) "disagrees that the Debtor is current in ongoing postpetition mortgage payments. Debtor is post-petition delinquent for the February 1, 2012 through October 1, 2012 payments in the amount of $1,274.87 each, less sus-

pense in the amount of $758.35, for a postpetition arrearage totaling $10,715.48." [4] (Cure Resp. at 1.)

Neither the Trustee nor the Debtor filed a motion regarding the Cure Response.

On November 21, 2012, the Trustee filed Final Report and Account (Main Case Doc. # 69). The Court issued Discharge of Debtor After Completion of Chapter 13 Plan (Main Case Doc. # 71) on November 26, 2012.

The Debtor moved to reopen her case on March 18, 2013 (Main Case Doc. # 74), in order to file an adversary proceeding against Chase for violation of the automatic stay and Rule 3002.1. The Court entered Order Granting Debtor's Motion to Reopen Case (Doc. # 75) on March 18, 2013.

On June 17, 2013, the Debtor filed the Complaint, which alleges that Chase (i) failed to credit $6,255.00 to the Mortgage, although it acknowledged payment of this amount in the Provisional Order Resolving Motion for Relief from Stay (Docket Number 22) as to Real Property Located at 5027 Simon Road, Youngstown, OH 44512 ("Agreed Order") (Main Case Doc. # 26)

---

4. Deutsche Bank defined itself as Creditor in the Cure Response. Nowhere in the Motion to Dismiss does Chase explain the relationship, if any, between itself and Deutsche Bank. Indeed, Chase retreats to use of the passive voice in reference to the filing of the Cure Response. "On October 3, 2012, within 21 days provided for under Bankruptcy Rule 3002.1 and the Cure Payment Notices for filing a response, a ... Cure Notice Response was filed with respect to *Chase's claim* arising out of the Note and Mortgage." (Mot. to Dismiss at 4 (emphasis added).) Claim No. 4, which was transferred to Chase from Washington Mutual (Main Case Doc. # 44), was filed by Washington Mutual as servicer for Deutsche Bank. Claim No. 15 lists the Creditor as Deutsche Bank with payment to be made to Washington Mutual Mortgage. Rule 3002.1(b) requires "the holder of the claim" to file and serve a notice of any change in the

payment amount on the residential mortgage. Prior to transfer of Claim No. 4, Chase (not Washington Mutual), "as servicer for Deutsche Bank," filed two Notices of Mortgage Payment Change (Main Case Docs. ## 42 and 43, dated December 12, 2010 and April 15, 2011, respectively). After transfer of Claim No. 4, Chase "as servicer for Deutsche Bank" filed a third Notice of Mortgage Payment Change (Main Case Doc. # 47) on July 18, 2011. Chase, in its own name, not as servicer, filed a fourth Notice of Mortgage Payment Change (Main Case Doc. Nov. 15, 2012). The Cure Response was filed by Deutsche Bank, which is the holder of Claim No. 15, whereas Chase is the holder of Claim No. 4. As a consequence, it is difficult to determine how and by whom the delinquency for February through October 2012, as set forth in the Cure Response, was calculated.

entered by the Court on April 3, 2008 (Compl.¶ 14); (ii) overcharged the Debtor for the escrow on the Mortgage, which led to an affidavit of default being filed by Chase in September 2008 (later withdrawn), indicating that the Debtor had not made the requisite payments (*id.* ¶ 15); (iii) sent letters to the Debtor indicating that she was in default of the Agreed Order, including a letter in February 2012 sent by counsel for Chase that the post-petition escrow account was delinquent due to the failure of Chase to include $2,496.00 of pre-petition escrow payments in its proof of claim (*id.* ¶ 16); (iv) filed duplicative claims for escrow payments as the Agreed Order included $800.00 in pre-petition escrow payments that were accounted for in Claim No. 4 (*id.*); (v) never adjusted the escrow account and continued to charge the Debtor $319.00 per month for escrow, which was an overcharge of more than $100.00 per month for more than two years (*id.* ¶ 17); (vi) overcharged and misapplied the Debtor's Mortgage payments, which caused her to be behind on her payments upon completion of the bankruptcy and resulted in Chase threatening foreclosure (*id.*); and (vii) recklessly and willfully caused the Debtor "tremendous damages" (*Id.* ¶ 18).[5]

### *III. MOTION TO DISMISS*

■ Chase asserts that the Complaint must be dismissed for failure to state a claim on the grounds of (i) waiver; and (ii) res judicata. As set forth below, Chase's arguments fail because they are based on a faulty reading of Federal Rule of Bankruptcy Procedure 3002.1. The Court begins its analysis with Rule 3002.1, as it applies to the instant case.

There is no question that Rule 3002.1 applies to Claim Nos. 4 and 15, which are

based on the Mortgage relating to the Debtor's principal residence. Rule 3002.1, which became effective December 2, 2011, provides, as follows:

(a) In General

This rule applies in a chapter 13 case to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan.

(b) Notice of payment changes

*The holder of the claim shall file and serve* on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

(c) Notice of fees, expenses, and charges

*The holder of the claim shall file and serve* on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. *The notice shall* be served within 180 days after the date on which the fees, expenses, or charges are incurred.

(d) Form and content

*A notice filed and served under subdivision (b) or (c) of this rule shall* be prepared as prescribed by the appropriate Official Form, and filed as a supplement to the holder's proof of claim. *The notice is not subject to Rule 3001(f).*

---

**5.** Although the Debtor's Motion to Reopen indicated that she intended to allege that Chase had violated the automatic stay and

Rule 3002.1, the Complaint contains no allegations concerning Rule 3002.1. (*See* Main Case Doc. # 74.)

(e) Determination of fees, expenses, or charges

*On motion* of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, *the court shall, after notice and hearing, determine* whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

(f) Notice of final cure payment

Within 30 days after the debtor completes all payments under the plan, *the trustee shall file and serve* on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. *The notice shall* also inform the holder of its obligation to file and serve a response under subdivision (g). If the debtor contends that final cure payment has been made and all plan payments have been completed, and the trustee does not timely file and serve the notice required by this subdivision, *the debtor may file and serve the notice.*

(g) Response to notice of final cure payment

Within 21 days after service of the notice under subdivision (f) of this rule, *the holder shall file and serve* on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code. *The statement shall itemize the required cure or postpetition amounts,* if any, that the holder contends remain unpaid as of the date of the statement. *The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).*

(h) Determination of final cure and payment

*On motion of the debtor or trustee filed within 21 days after service of the statement under subdivision (g) of this rule, the court shall, after notice and hearing, determine* whether the debtor has cured the default and paid all required postpetition amounts.

(i) Failure to notify

*If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:*

(1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr.P. 3002.1 (West 2013) (emphasis added).

The Advisory Committee Note to Rule 3002.1 states:

This rule is new. It is added to aid in the implementation of § 1322(b)(5), which permits a chapter 13 debtor to cure a default and maintain payments of a home mortgage over the course of the debtor's plan.

In order to be able to fulfill the obligation of § 1322(b)(5), *a debtor and the trustee must be informed of the exact amount needed to cure any prepetition arrearage,* see Rule 3001(c)(2), *and the*

*amount of the postpetition payment obligations.* If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other changes, *notice of any change in payment amount needs to be conveyed to the debtor and trustee.* Timely *notice of these changes will permit the debtor or trustee to challenge the validity of any such charges,* if necessary, and to adjust postpetition mortgage payments to cover any properly claimed adjustment. Compliance with the notice provision of the rule should also eliminate any concern on the part of the holder of the claim that informing a debtor of a change in postpetition payment obligations might violate the automatic stay.

\* \* \*

Subdivision (f) [now (h)] provides the procedure for the judicial resolution of any disputes that may arise about payment of a claim secured by the debtor's principal residence. *The trustee or debtor may move no later than 21 days after the service of the statement under subdivision (e) [now (g) ] for a determination by the court of* whether the prepetition default has been cured and whether all postpetition obligations have been fully paid.

FED. R. BANKR.P. 3002.1, Advisory Committee Note (West 2013) (emphasis added).

The Motion to Dismiss is premised upon Chase's argument that Rule 3002.1(h) required the Debtor to file a motion within 21 days after Chase filed the Cure Response if she ever wanted to dispute that there was a post-petition arrearage. However, Chase misreads Rule 3002.1(h). The Rule does not require the Trustee or the Debtor to file a motion in response to the Cure Response. Rule 3002.1(h) merely provides for what is to happen if a motion is filed.

Although the Advisory Committee Note states that subdivision (h) of Rule 3002.1 provides the procedure for the judicial resolution of any disputes that may arise about payment of a claim secured by the debtor's principal residence, it does not say that it is the only or the exclusive procedure that may be used to resolve such disputes. Moreover, the Rule says nothing about the consequences if a debtor fails to file a motion under Rule 3002.1(h).[6]

Chase argues that the negative pregnant rule does not apply here and that the canons of statutory construction require the Court to look at the plain meaning of the rule. (Reply at 2–3.) However, a plain reading of Rule 3002.1(h) demonstrates that it does not (i) contain compulsory language requiring the debtor or the trustee to file a motion in response to a creditor's statement that it disagrees with the trustee's notice of final cure payment; or (ii) purport to be the exclusive procedure for determining if the debtor has paid all required post-petition amounts due on his/her residential mortgage. The word "shall" is included in subsections (b), (c), (d) and (g) regarding obligations of the holder of a claim secured by a debtor's principal residence to file certain notices and statements. "Shall" also applies to the trustee's obligation in subsection (f) to file a notice of final cure payment. However, "shall" is noticeably missing from subsection (h), which simply says what is to happen if a motion is filed by either the debtor or the trustee. Consistent with the language of Rule 3002.1(h), the Advisory Committee Note states that the debtor or

---

**6.** The only ramifications in Rule 3002.1 are for the creditor's failure to comply. It would be fundamentally unfair to penalize a debtor for noncompliance without notice and a hearing, when such are required before penalizing the creditor. *See* Rule 3002.1(i).

trustee "may" file a motion to seek a determination from the court.

Chase argues that there "would have been no point in setting forth a 21 day time frame and a right to hearing if a debtor could simply ignore the Cure Notice Response and sue a creditor at his or her leisure at a later time." (*Id.* at 3.) The 21–day time frame, however, serves a different purpose. If a creditor disputes that a claim for which the trustee is responsible for payment has been made (*i.e.*, a prepetition default or a post-petition payment made through a conduit plan) the trustee will, of necessity, have to file a motion for determination that the debtor has cured the pre-petition default and paid all required post-petition amounts before the trustee can file the final accounting. However, if a creditor disputes that the debtor is current on post-petition payments that the plan calls for the debtor to have made directly to the creditor and no motion is filed, the trustee can file a final accounting, the debtor can receive a discharge and the court can close the case. Without the 21–day period in Rule 3002.1(h), the controversy created by a creditor disputing the trustee's notice of final cure payment could necessitate that a case remain open indefinitely—even if the dispute has nothing to do with administration of the chapter 13 case.[7]

Although it is not explicit, the Court understands that the 21–day period in Rule 3002.1(h) provides the time period for the bankruptcy court to make a determination whether the debtor has paid all required post-petition amounts on the mortgage. Rule 3002.1(h) was intended to provide a debtor with a procedure to seek a determination of the status of his/her mortgage prior to closure of the bankruptcy case. The 21–day period, however, in no way limits any other court from making a determination of the post-petition status of a mortgage at a later date and in a different forum.

Chase cites *In re Poff,* No. 11–15869, 2012 WL 7991472, 2012 Bankr.LEXIS 1189 (Bankr.S.D.Ohio March 16, 2012) for the proposition that "[R]ule 3002.1(h) provides [sic] mechanism to bring any dispute regarding charges to court's attention 'before the case is closed.'"[8] (Reply at 5.) The *Poff* case dealt with Rule 3002.1 in an entirely different context; the statement was made in response to a debtor's attempt to add provisions in a proposed chapter 13 plan concerning the mortgage creditor's obligations. The bankruptcy court found that the proposed provisions either restated the law or were unnecessary because of Rule 3002.1. Furthermore, the *Poff* court did not find that Rule 3002.1(h) required a debtor to file a motion; the court found no such requirement and instead found that filing a motion was discretionary. Chase conveniently ignores the sentence immediately before the one it quotes, which states, "If the secured creditor files a timely dispute, the debtor or the Chapter 13 trustee *may* file a motion to have the court determine whether the debtor has cured the default and paid all required post-petition amounts." *Poff,* 2012 WL 7991472, at *8, 2012 Bankr.LEXIS 1189, at *21 (emphasis added). Consistent with Rule 3002.1(h), the *Poff* court did not find any requirement in the Rule that a debtor or the trustee is required to file a motion.

---

7. Indeed, where, as here, the Debtor's Mortgage payment was paid directly to the creditor and not through the Trustee, any dispute regarding post-petition payments could never

be remedied by further administration of the case.

8. This Court does not disagree with this statement.

■ Despite the absence of any requirement in Rule 3002.1 for the Debtor to file a motion in response to Chase's Cure Response, Chase attempts to manufacture such requirement. Chase argues, "Upon the filing by Chase of its Cure Notice Response, a duty was triggered-pursuant to Bankruptcy Rule 3002.1(h)-on the part of Plaintiff to file a motion for determination of final cure payment if she wished to challenge the postpetition account included in the Cure Notice Response. *See* Cure Payment Notices at 1; and Fed. R. Bankr.P. 3002.1(h)." (Mot. to Dismiss at 8.) The language in the Cure Response upon which Chase relies states:

> **Pursuant to Federal Bankruptcy Rule 3002.1(h), within 21 days of the service of this Response, the Trustee and/or the Debtor shall request a hearing to determine whether the Debtor has cured the default and paid all required post-petition amounts. If no request for hearing is made, Creditor's Response shall be accepted as an accurate statement of the loan's status.**

(Cure Resp. at 1–2) (bold in original). However, Chase's misstatement of Rule 3002.1(h) in its Cure Response does not and cannot create an obligation on the part of the Debtor to file a motion when the Rule does not "trigger a duty" on the part of the Debtor to request a hearing to determine whether the Cure Response is accurate. Chase saying it doesn't make it so.

### A. *Chase's Waiver Argument*

■ Chase argues, "Plaintiff was aware that her failure to file a motion for determination would preclude her ability to dispute the application and amount of the mortgage payments that resulted in the deficiency identified in the Cure Notice Response." (Mot. to Dismiss at 9.) Chase bases this proposition on the Trustee's Cure Notice, which states, "A hearing on

your response to this Notice shall *not* be scheduled unless a motion pursuant to Rule 3002.1(h) of the Federal Rules of Bankruptcy Procedures [sic] is requested by a party in interest." (*Id.* (quoting the Final Cure Notice at 1.)) Chase goes on to assert that, by not filing a motion, the Debtor has "voluntarily relinquished and abandoned her right to challenge the amount and application of the pre-discharge mortgage payments; accordingly, Plaintiff's Complaint is barred by the doctrine of waiver." (*Id.* at 9–10.)

The Trustee's statement in the Final Cure Notice, however, in no way would have made the Debtor aware that she had to file a motion in response to the Cure Response or be forever precluded from challenging the content of the Cure Response. The Trustee's statement makes no mention of preclusion and simply informs that if no motion is filed, there will be no hearing. There is nothing in the Trustee's statement regarding the effect, result or ramification of not having a hearing on the Cure Response.

As set forth above, there is no basis for Chase's misstatement of Rule 3002.1(h) that the Debtor "shall" request a hearing within 21 days after service of the Cure Response. Moreover, there is nothing in Rule 3002.1, any other Bankruptcy Rule or the Bankruptcy Code to support Chase's statement that, if a request for hearing is not made, then its Cure Response "shall be accepted as an accurate statement of the loan's status." (*Id.* at 5.) Indeed, to the contrary, Rule 3002.1(g) specifies that the statement filed as a supplement to the proof of claim (*i.e.,* the Cure Response) "is not subject to Rule 3001(f)." Rule 3001(f) states, "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.P. 3001(f) (West 2013).

Chase acknowledges that the Debtor accurately states the proposition that the Cure Response is not entitled to a presumption of prima facie validity under the Bankruptcy Rules at the time it was filed. (Reply at 8 n. 6.) However, Chase maintains that this proposition only would have affected Chase's burden of proof at a hearing if the Debtor had filed a motion seeking a determination whether she had paid all post-petition amounts. (*Id.*) While Chase acknowledges that the Cure Response is not presumptively valid, Chase nonetheless makes the extraordinary leap that the Cure Response has a preclusive effect as to the accuracy of the status of the Mortgage. Chase's statement to that effect does not make it so. Chase cites to no case law to support its claim that the Debtor waived her ability to contest the post-petition default amount in the Cure Notice when she did not file a motion for determination in response to the Cure Response. Likewise, the Court could find no case law to that effect.[9]

Although the bankruptcy court in *In re Rodriguez,* No. 08–80025–G3–13, 2013 WL 3430872, 2013 Bankr.LEXIS 2738 (Bankr. S.D.Tex. July 8, 2013) dealt with Rule 3002.1(h) in a different context, its opinion is instructive. In *Rodriguez,* during the course of the chapter 13 case, the creditor filed two notices of post-petition mortgage fees under Rule 3002.1(c), to which there was no objection. Like the statement in Rule 3002.1(h), notices under Rule 3002.1(c) are not subject to Rule 3001(f). The trustee filed a notice that the debtor had completed all plan payments, followed by a motion seeking an order deeming, pursuant to Rule 3002.1(f), that the debtor's debt to the creditor was current. The creditor opposed the trustee's motion and

asserted that the debtor had paid the amount necessary to cure the pre-petition default on the note, but had not paid post-petition arrearages in the amount of $25,798.02. The court held a hearing, at which the debtor testified that he believed the cost of insurance was being paid out of the monthly mortgage payments he made directly to the creditor. The creditor presented no evidence of any disbursements it may have made for taxes or insurance. The bankruptcy court found that, under Rule 3002.1(h), the burden of proof was on the creditor. Even though the debtor had never objected to the two supplements to the proof of claim for fees, the court held that the debtor had cured the default and paid all required post-petition amounts. The court stated, "[The creditor] filed two notices of post-petition fees, expenses, and charges, totaling $908.28. Debtor did not object to those notices. The notices were timely filed. However, those notices do not enjoy the presumption of validity." *Id.* at *4, 2013 Bankr.LEXIS 2738, at *11. The *Rodriguez* court found that notices under Rule 3002.1(c) have no presumptive validity even if the debtor fails to object to them.

■ This Court likewise finds that statements filed pursuant to Rule 3002.1(g) have no presumptive validity even if there is no objection thereto. As a consequence, the Cure Response has no prima facie evidentiary effect and no presumptive validity. The Debtor was not required by Rule 3002.1(h) to file a motion in opposition to the Cure Response. Accordingly, Chase's attempt to construct a waiver by the Debtor's failure to file a motion and to compel the Debtor's acceptance of the Cure Response as an accurate statement

---

9. Chase cites this Court's decision in *In re Adkins,* 477 B.R. 71 (Bankr.N.D.Ohio 2012) for the proposition that compliance with Rule 3002.1 is mandatory. (Mot. to Dismiss at 9.)

While this is an accurate statement of that case, it has no applicability here because the Debtor was not required to take any action by Rule 3002.1(h).

of the status of the Mortgage is unavailing. Including such statement in the Cure Response has no legal effect. The Debtor's failure to file a motion when she had no duty to do so does not constitute waiver.

There is no basis for Chase's arguments that (i) the Debtor was required to file a motion pursuant to Rule 3002.1(h); and (ii) the Cure Response constitutes an accurate statement of the status of the Mortgage. The Debtor did not knowingly and intentionally relinquish and abandon her ability to challenge whether she has paid all post-petition amounts relating to the Mortgage. Because the Debtor was not required by Rule 3002.1(h) to file a motion for a determination of the post-petition claim in the Cure Response, her failure to do so cannot and does not constitute a waiver of her ability to challenge such amount later. Accordingly, Chase's argument for dismissal on the basis of waiver is without merit.

### B. Chase's Res Judicata Argument

■ Similarly, Chase's argument for dismissal based on res judicata or issue preclusion must fail because of its misreading of Rule 3002.1. As Chase correctly notes, in order for res judicata or issue preclusion to be applicable there must be "a final decision on the merits by a court of competent jurisdiction." (Mot. to Dismiss at 11.) Chase's argument for "a final decision on the merits" rests entirely on the Debtor and all creditors being bound by the terms of the Debtor's confirmed Plan. Chase postulates that, because the Debtor's confirmed Plan called for payment of Chase's claim and "the final amount of which was subsequently determined pursuant to Bankruptcy Rule 3002.1," the Debtor cannot relitigate the amount of the alleged post-petition arrearage set forth in the Cure Response. (*Id.*) Because the

Debtor did not file a motion under Rule 3002.1(h), Chase states:

> As of October 29, 2012, issues regarding the application and amount of Plaintiff's post-petition pre-discharge mortgage payments were determined as between these same parties pursuant to Bankruptcy Rule 3002.1. . . .
>
> Under res judicata, Plaintiff is barred from asserting her claim in the Complaint, as she was required to raise these issues in the context of a motion for determination within her bankruptcy.

(*Id.* at 11–12.)

There is no legal foundation for this proposition because the final amount of Chase's claim, as supplemented by the Cure Response, was never determined pursuant to Rule 3002.1. Such a determination would have occurred only if a motion had been filed by the Trustee or the Debtor and the Court, after notice and hearing, had "determine[d] whether the debtor has cured the default and paid all required postpetition amounts." FED. R. BANKR.P. 3002.1(h). Both parties agree that the Debtor did not file a motion and the Court did not make a determination.[10] As set forth above, the Debtor was not required by Rule 3002.1(h) to file a motion in response to the Cure Response, although she was permitted to do so. The Debtor's failure to file a motion at that time did not result in any determination by the Court regarding the amount, if any, of the Debtor's post-petition, pre-discharge default on the Mortgage.

Most troubling to the Court is Chase's attempt to use the Confirmation Order as a final order determining the amount of its post-petition claim, as set forth in the Cure Response. There is simply no basis for this assertion. In a post-petition foreclo-

---

10. In the present case, there is no dispute that the pre-petition default claim was paid by the Trustee. (*See* Final Cure Notice and Cure Response.)

sure action, a state or federal court would have to give full faith and credit to a final order of another court of competent jurisdiction. It would be impossible for any court to find that the Confirmation Order, coupled with the Cure Response, finally adjudicated the amount of debt that the Debtor owes to Chase for post-petition, pre-discharge defaults. There is no language in the Confirmation Order or any other order of this Court to that effect. In fact, there is nothing to support Chase's argument of finality except for the self-serving misstatement of Rule 3002.1(h) in the Cure Response. As set forth above, the fact that Chase says the Cure Response represents an "accurate statement of the loan's status" does not make it so.[11] More importantly, the Cure Response cannot be and certainly is not a final order of this Court. In short, there has been no final determination of the amount, if any, that the Debtor owes to Chase relating to post-petition defaults on the Mortgage on her principal residence.

Accordingly, there has been no final decision on the merits by a court of competent jurisdiction. Without such a final decision, all of the remaining components of res judicata cannot exist. As a consequence, Chase's argument for dismissal on the basis of res judicata is without merit.

## IV. CONCLUSION

As set forth above, Chase has failed to establish a legal basis for either of its arguments for dismissal. Neither the doctrine of waiver nor res judicata requires this Court to dismiss the Debtor's Complaint. The Motion to Dismiss Complaint

will be denied. An appropriate order will follow.

## ORDER DENYING MOTION TO DISMISS COMPLAINT

This cause is before the Court on Motion to Dismiss Complaint (Doc. # 9) filed by Defendant JP Morgan Chase Bank, National Association, successor by merger to Chase Home Finance, LLC ("Chase"), on August 15, 2013. Debtor/Plaintiff Doreen Bodrick ("Debtor") filed Memorandum in Opposition to Defendant's Motion to Dismiss Summary of Argument [sic] ("Memo in Opposition") (Doc. # 16) on September 23, 2013. On October 3, 2013, Chase belatedly filed Reply in Support of Motion to Dismiss Complaint ("Reply") (Doc. # 17).

The Motion to Dismiss seeks dismissal of Complaint for Violation of the Automatic Stay ("Complaint") (Doc. # 1) on the grounds of waiver and res judicata.

For the reasons set forth in the Court's Memorandum Opinion Regarding Motion to Dismiss Complaint[1] entered on this date, the Court FINDS and ORDERS:

1. Federal Rule of Bankruptcy Procedure 3002.1(h) did not require the Debtor to file a motion for the Court to determine whether the Debtor had paid all required post-petition amounts relating to the Debtor's residential mortgage, although the Debtor was permitted to file such motion.

2. The failure of the Debtor to file a motion pursuant to Federal Rule of Bankruptcy Procedure 3002.1(h) did not and does not constitute a waiver of the Debtor's ability to later dispute any post-petition amounts included in the Cure Re-

---

11. In the present case, the Court is particularly disturbed by Chase's attempt to put a gloss of finality on the alleged amount of the Debtor's post-petition Mortgage default since Deutsche Bank, which filed the Cure Response, was not the "holder" of Claim 4 at the time the Cure Response was filed. (See

*supra* at page 797 n. 4.) Rule 3002.1(g) requires the holder of the claim to file a response.

1. All capitalized terms have the same meaning as in the Memorandum Opinion.

sponse filed pursuant to Federal Rule of Bankruptcy Procedure 3002.1(g).

3. The failure of the Debtor to file a motion pursuant to Federal Rule of Bankruptcy Procedure 3002.1(h), did not and does not result in the application of res judicata because there is no final decision of the Court concerning the merits of the post-petition amounts asserted to be due in the Cure Response.

4. The Motion to Dismiss is denied in its entirety.