Stephenson, J.
 

 There is really just one question here, namely, do the facts pleaded by the Brancifortis in their petition establish a trust relationship between them and the Union Trust Company? If they do, then the Brancifortis are entitled to a preference and the answer does not state a defense. If they do not, there being nothing to indicate a bailment, then Brancifortis
 
 *352
 
 have failed on their petition, as the relation of debtor and creditor would necessarily exist between the bank and Brancifortis, and they would stand in the shoes of a general creditor.
 

 We say there is no bailment here, as the specie was destroyed, if there ever was a specie, when the Brancifortis withdrew their account by the withdrawal slip process and returned it to the bank, which credited it to an account known as the Escrow Deposit Account. If this was a trust fund deposited for distribution, the case comes within the purview of
 
 McDonald, Admr.,
 
 v.
 
 Fulton, Supt. of Banks,
 
 125 Ohio
 
 St., 507,
 
 182 N. E., 504, 83 A. L. R., 1107, and
 
 Fulton, Supt. of Banks,
 
 v.
 
 University of Dayton,
 
 129 Ohio St., 90, 193 N. E., 758, and the Brancifortis would be general creditors of the bank without claim for preference.
 

 The third paragraph of the syllabus in the case of
 
 Fulton, Supt.,
 
 v.
 
 University of Dayton, supra,
 
 disposes of the proposition that money placed in a bank must be followed in specie or at least traced to a particular fund before a corpus can be provided for the trust, and we are not disposed to stray from the law therein announced, in this particular case.
 

 We likewise adhere to the fourth paragraph of the syllabus in that case, to the effect that where trust funds were deposited in a bank pending distribution or investment, without an express agreement to the contrary, as to such moneys, the relation of creditor and debtor existed. But do we have such case here?
 

 The same case, second paragraph of the syllabus, states that in determining whether title to funds passes to a depositary bank, regard must be had to the agreement under .which the deposit is made and to all the conditions and circumstances of the arrangement. We subscribe to that law.
 

 There is another feature that is entitled to consideration, namely, the legal character of the transaction. To amplify: This money was placed with the bank
 
 *353
 
 under an escrow agreement wherein the conditions as to the final disposition of the money were fully set out. The naked fact that it was an escrow agreement has some legal significance. An escrow agreement is a creature of the law, the legal requirements of which are well defined and clearly understood by those who deal with them. The bank was an escrow agent. It knew just exactly what liberties it could take with the funds deposited thereunder. It occupied a sort of dual capacity; it was a paid trustee. Paid for what! For carrying out the terms of the escrow agreement. Let us examine the escrow agreement. We quote from the Escrow Agreement, Exhibit “A,” made a part of the answer of the Superintendent of Banks:
 

 “The undersigned Giovanna Branciforti and Salvatore Branciforti, hereinafter known as the Grantee, herewith
 
 deposits or will cause to be deposited with you in escrow:
 
 [Italics ours.]
 

 ‘ ‘ Cash or checks to your order in the sum of $299.0.00.”
 

 The Brancifortis imposed the further condition that upon delivery by the grantor of the muniments of title therein specified, the bank was to take from the moneys so deposited certain specific charges, including its own, and remit the balance of the moneys so deposited to the grantor.
 

 An escrow fills a definite niche in the body of the law. ' It has a distinct legal character. Escrow is defined as follows:
 

 “A written instrument which by its "terms imports a legal obligation, and which is deposited by the grantor, promissor, obligor, or his agent, with a stranger or third party, to be kept by the depositary until the performance of a condition or the happening of a certain event, and then to be delivered over to the grantee, promisee or obligee.” 10 Ruling Case Law, 621.
 

 It will be noted that the above definition deals with
 
 *354
 
 a grantor alone, but the law is progressive and in Ohio the grantee, promisee or obligee may impose conditions in the escrow instrument or agreement that have the same binding effect upon the escrow agent as those of the grantor, promissor or obligor.
 
 Cincinnati, Wilmington & Zanesville Rd. Co.
 
 v.
 
 Iliff,
 
 13 Ohio St., 235. This case stands unreversed and unmodified. In the absence of this precedent, custom and usage has made it law.
 

 The law is not in complete harmony as to whether the depositary is an agent or trustee. We are inclined to the belief that he is both. Agent in so far as specific personal duties are to be performed, and trustee in so far as the funds placed in his hands are concerned. We find the following text law in 16 Ohio Jurisprudence, 368, Section 11:
 

 “The depositary may not perform any acts with reference to handling the deposit, or its .disposal, which are not authorized by the contract of deposit.”
 

 This text is gathered from
 
 Glick
 
 v.
 
 Galier,
 
 116 Ohio St., 41, 155 N. E., 385. This is a
 
 per curiam
 
 opinion of the court in which six members of the court concurred. A careful analysis of the opinion warrants the text.
 

 Our attention is directed to the following case, viz.,
 
 Wilson
 
 v.
 
 Woolverton,
 
 137 Kan., 663, 21 P. (2d), 313, wherein the court says:
 

 “That an instrument may operate as an escrow,
 
 * *
 
 * parties must actually contract, and the deposit must be absolute and beyond control of depositor. ’ ’
 

 Did not the Brancifortis do this very thing? They withdrew the money from their savings account, by withdrawal slip, and delivered it to the bank. The bank then charged the savings account with the amount and credited it to the Escrow Deposit Account. It made little or no difference what the bank called this account. What was it, in fact and in law?
 

 
 *355
 
 The very name “escrow” gave it the earmarks of a trust, and any other requirement it lacked along that line was accounted for in the conditions imposed and set out in the escrow agreement.
 

 Brancifortis received no interest on this money. They could not check on it; neither could the realty company.
 

 Did the word “deposit” when used in connection with the word “escrow” authorize the bank to convert the amount into its commercial account? "We think not. In so holding we are not'unmindful of the Ohio banking laws. Section 710-165, General Code, provides:
 

 “No property or securities received or held by any trust company in trust shall be mingled with the investments of the capital stock or other properties belonging to such trust company or be liable for its debts or obligations. Moneys held in the trust department by any trust company, or by any bank having a trust department or doing a trust business, pending distribution or investment may be treated as a deposit in the trust department or may be deposited in any other department of the bank, subject in other respects to the provisions of law relating to deposit of trust funds by trustees and others.”
 

 We find no fault with this enactment. The first sentence imposes the specific duty upon the bank not to commingle trust funds with other funds of the bank. The last sentence gives the bank the right to take liberties with trust funds pending distribution or investment. There is every reason for the latter provision. A trust fund cannot be checked against. In order to distribute or invest, the trustee or fiduciary must either take the fund manually or check against it. A trustee is held to a high degree of care regarding trust funds, and in this day and age he knows that to carry trust funds on his person or place them in his office does not comport with that degree of care
 
 *356
 
 required of him; consequently, when the time arrives for him to distribute or invest, the fund must be placed where he can check against it, in other words, in the commercial account, and when it once goes into the commercial account it loses its sanctity as a trust fund and is
 
 merely money on deposit.
 

 Brancifortis could not distribute, neither could the realty company. The bank alone was the disburser of this money, according to the terms of a contract which it had accepted. It was not necessary for it to draw a check. As trustee, it was required to have the fund, and all it had to do was hand it over as directed. The replevin action brought by the realty company and set out in the answer of the Superintendent of Banks was not adverted to by counsel and we make no reference thereto as the real issue in the case is between the Brancifortis and the Superintendent of Banks.
 

 Entertaining the view that we do of this case, we do not regard it as necessary to enlarge upon it further.
 

 Judgment affirmed.
 

 Weygandt, C. J., Jones, Matthias, Day and Zimmerman, JJ., concur.
 

 Williams, J., not participating.