SPALLA et al., Appellants,

v.

FRANSEN et al., Appellees.

[Cite as *Spalla v. Fransen*, 188 Ohio App.3d 666, 2010-Ohio-3461.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2009–G–2912.

Decided July 23, 2010.

</div>

Kevin J.M. Senich, L.L.C., and Kevin J.M. Senich, for appellants.

Paulette Kohler Fransen, pro se.

Reminger & Reminger Co., L.P.A., and Todd M. Jacket, for appellees Christopher Zuzolo and Zuzolo, Zuzolo & Zuzolo.

---

MARY JANE TRAPP, Presiding Judge.

{¶ 1} Frank Spalla and Anne Buck appeal from several judgments of the Geauga County Court of Common Pleas in favor of Christopher Zuzolo and the law firm Zuzolo, Zuzolo & Zuzolo. The appellants were sellers in a real estate transaction in which the buyer failed to close the sale pursuant to a purchase agreement. They filed a lawsuit against not only the buyer for breach of contract but also against the title company and an attorney associated with the title company, as well his law firm, alleging breach of fiduciary duty, third-party legal malpractice, fraud, and civil conspiracy. The sellers then settled their claim with the title company. The court granted summary judgment in favor of the attorney and the law firm regarding the third-party-malpractice, fraud, and civil-conspiracy claims and limited the sellers' damage for the breach-of-fiduciary-duty

claim. The sellers now appeal from these judgments. For the following reasons, we affirm.[1]

{¶ 2} **Substantive Facts and Procedural History**

{¶ 3} The circumstances surrounding the failed real estate transaction were recited in *Spalla v. Fransen*, 11th Dist. No. 2009–G–2910, 2010-Ohio-3460, and are repeated below, adding additional facts pertinent to this appeal.

{¶ 4} Paulette Kohler Fransen entered into a purchase agreement with Spalla and his ex-wife, Anne Buck (collectively, "Spalla") to buy their house at 15054 Hemlock Point Road, Russell Township, for the price of $695,000. The "Purchase Agreement Offer, Receipt and Seller's Acceptance" is apparently a form contract for residential properties used by the realtor, Coldwell Banker. It called for $10,000 of earnest money to be paid to "American Title Service, Chris Zuzolo, Attorney" within ten days of the seller's acceptance of an offer. It required the buyer to apply for financing within five days, and, if the loan was denied within 45 days, the buyer could waive the financing condition in writing. The agreement called for the proceeds of any mortgage loan to be obtained and the closing to occur within 90 days of the acceptance.

{¶ 5} A review of the purchase agreement indicates that Spalla accepted Fransen's offer of $695,000 on July 20, 2004. Paragraph 13 of the document states: "Upon written acceptance, this offer * * * shall become a legally binding agreement."

{¶ 6} The purchase agreement was then modified a half dozen times, extending the closing date eventually to December 31, 2004. Fransen never obtained financing for the house and ultimately did not go through with the transaction. The check for $10,000 for the earnest money was tendered but not paid because of insufficient funds; Spalla only learned of that fact from Zuzolo a few days before the scheduled closing date. Spalla relisted the house in the spring of 2005 and, in December of that year, filed an action for specific performance.

{¶ 7} The complaint named not only Fransen but also American Title Services, Inc. ("ATS"), the title company named in the purchase agreement, Christopher Zuzolo, and his law firm, Zuzolo, Zuzolo & Zuzolo. Spalla later amended his complaint to seek money damages instead of specific performance after he sold the property for $555,000 to new buyers in June 2006.

---

1. The sellers' breach-of-contract claim against the buyer was tried to the court. The court found the buyer in breach and awarded damages in the amount of $144,500 to the sellers. In a separate appeal, *Spalla v. Fransen*, 188 Ohio App.3d 658, 2010-Ohio-3460, 936 N.E.2d 552, we affirmed the trial court's judgment.

{¶ 8} The complaint alleged a breach of contract by Fransen; a breach of fiduciary duty by ATS, Zuzolo, and the law firm; and a breach of contract to administer the escrow by ATS. In addition, it asserted a third-party malpractice claim against Zuzolo and the law firm and fraud and civil-conspiracy claims against all the defendants.

{¶ 9} Spalla then settled with ATS for $28,500 for the claim against ATS. Zuzolo and the Zuzolo law firm filed a motion for summary judgment. They maintained that they were not the escrow agent in the real estate transaction. The court granted summary judgment in their favor regarding the third-party-malpractice, fraud, and civil-conspiracy claims. The court, however, found that Zuzolo breached his duty regarding the earnest money by failing to disclose to Spalla that there were insufficient funds to cover the earnest-money check. For the breach, the court limited Spalla's damages to $10,000, the amount of the earnest money.

{¶ 10} Zuzolo and the law firm then filed a motion for reconsideration, contending that they were entitled to a setoff of the settlement Spalla had received from ATS. The court granted the motion, on the ground that Spalla had been fully compensated for the claim regarding the earnest money and therefore should not be entitled to any additional compensation.

{¶ 11} The only remaining claim tried to the court was the breach-of-contract claim against Fransen. The court found Fransen in breach and awarded Spalla damages of $140,000, which represented the difference between the original contract price of $695,000 and the proceeds he eventually received from the new buyers, $555,000. Fransen appealed that judgment, and we affirmed the trial court in a companion case, *Spalla v. Fransen*, 2010-Ohio-3460.

{¶ 12} *Additional Facts Pertinent to the Instant Appeal*

{¶ 13} Zuzolo is an employee of Zuzolo, Zuzolo & Zuzolo. His practice consists mostly of providing legal services to American Title Services, Inc., a title company founded by his father in the 1970s. At one point during the pendency of the sale, instead of communicating through his real estate agent, Spalla began to communicate directly with Zuzolo regarding the sale. Zuzolo would send Spalla correspondences on the law firm's letterhead. When Spalla inquired about the earnest money, Zuzolo assured him of its existence by sending him a copy of Fransen's check.

{¶ 14} Spalla did not learn that the check had been drawn against insufficient funds until December 28, 2004. Spalla alleged that had he known Fransen had not paid the earnest money, he would have tried to sell the real estate to another buyer "more aggressively." Instead, he claims that he relied on Zuzolo's representation that Fransen was a qualified buyer. Spalla alleged that during

the pendency of the sale, he was approached twice by individuals who drove by the property and were interested in the house but were told that a sale of the house was pending. He further alleged that the property's value and marketability decreased by being off the market for a significant time.

{¶ 15} Regarding Spalla's breach-of-fiduciary claims against Zuzolo and the law firm, the trial court observed that the only reference in the purchase agreement relating to Zuzolo's obligations was in the earnest-money provision of the agreement, which required the earnest money to be paid to "American Title Service, Chris Zuzolo, Attorney" and be deposited in a trust account.

{¶ 16} The court noted that regarding escrow, the contract provided that "[a]ll documents and funds necessary to the completion of this transaction shall be deposited by the appropriate party in escrow with any lending institution or mutually agreeable escrow agent [within] 90 days of acceptance." The court stated that pursuant to the escrow provision in the purchase agreement, the escrow agent *was a matter for the parties to agree upon.* The court reasoned that the provision regarding the depositing of the earnest money did *not* imply that the party who held that earnest money was to serve as escrow agent. The purchase agreement did not specify any duties of ATS or Zuzolo other than to deposit the earnest money in a trust account.

{¶ 17} The court found that ATS and Zuzolo *did* owe a fiduciary duty to timely inform Spalla in the event that the check could not be honored due to insufficient funds.

{¶ 18} For the breach of this duty, the court limited the damages to $10,000, the amount of the earnest money. Zuzolo and the Zuzolo law firm thereafter filed a motion for reconsideration and setoff, and the trial court granted a setoff for the settlement money that Spalla had already received from ATS.

{¶ 19} The trial court also granted summary judgment in favor of Zuzolo and the law firm regarding the third-party-legal-malpractice, civil-conspiracy, and fraud claims, in judgments dated December 10, 2008, and April 28, 2009.

{¶ 20} Spalla now appeals, asserting two assignments of error:

{¶ 21} "[1] The trial court erred in granting in awarding [sic] summary judgment to Defendants Christopher Zuzolo, Zuzolo, Zuzolo & Zuzolo, LLC, Dr. Paulette Kohler Fransen, and Stonebridge Farm Trust in its Orders of December 10, 2008 and April 28, 2009.

{¶ 22} "[2] The trial court erred in granting the Motion for Reconsideration/Setoff of Defendants Christopher Zuzolo and Zuzolo, Zuzolo & Zuzolo, LLC on March 20, 2009."

{¶ 23} **Standard of Review**

{¶ 24} We review de novo a trial court's order granting summary judgment. *Hapgood v. Conrad*, 11th Dist. No. 2000–T–0058, 2002-Ohio-3363, 2002 WL 1400583, ¶ 13, citing *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546, 715 N.E.2d 1179. "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." Id., citing *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121.

{¶ 25} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶ 26} **Breach–of–Fiduciary Claim**

{¶ 27} Spalla's main claim in this dispute is that Zuzolo breached his fiduciary duty as the escrow agent in failing to timely inform him that the buyer's earnest money check was drawn against insufficient funds.

{¶ 28} A "fiduciary" is defined as "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." *Hurst v. Ent. Title Agency*, 157 Ohio App.3d 133, 2004-Ohio-2307, 809 N.E.2d 689, ¶ 39, quoting *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235. In *Hurst*, this court further explained that "[a] breach-of-fiduciary duty claim essentially is a negligence claim involving a higher standard of care. Thus, the party asserting such breach must establish the existence of a fiduciary duty, a breach of that duty, and an injury proximately resulting therefrom." (Citation omitted.) Id. at ¶ 39.

{¶ 29} To succeed on a claim of breach of fiduciary duty, the plaintiff must prove the existence of a duty arising out of a fiduciary relationship, failure to observe that duty, and injury resulting proximately therefrom. *Culbertson v. Wigley Title Agency* (Feb. 13, 2010), 9th Dist. No. 20659, 2002 WL 219570, * 3, citing *Strock* at 216, 527 N.E.2d 1235.

{¶ 30} An escrow is described by the Supreme Court of Ohio as follows:

{¶ 31} "An escrow in Ohio, as between grantor and grantee of real estate, is witnessed by a written instrument known as an escrow agreement, delivered by mutual consent of both parties to a third party denominated the depositary or escrow agent, in which instrument certain conditions are imposed by both grantor

and grantee, which conditions the depositary or escrow agent, by the acceptance and retention of the escrow agreement, agrees to observe and obey." *Squire v. Branciforti* (1936), 131 Ohio St. 344, 6 O.O. 59, 2 N.E.2d 878, paragraph one of the syllabus.

{¶ 32} "An escrow is a matter of agreement between parties, usually evidenced by a writing placed with a third-party depository providing certain terms and conditions the parties intend to be fulfilled prior to the termination of the escrow." *Pippin v. Kern–Ward Bldg. Co.* (1982), 8 Ohio App.3d 196, 198, 8 OBR 266, 456 N.E.2d 1235. See also *Waffen v. Summers*, 6th Dist. No. OT–08–034, 2009-Ohio-2940, 2009 WL 1741731, ¶ 29; *Janca v. First Fed. S. & L. Assn. of Cleveland* (1985), 21 Ohio App.3d 211, 213, 21 OBR 225, 486 N.E.2d 1216. "Escrow is controlled by the escrow agreement, placing the deposit beyond the control of the depositor and earmarking the funds to be held in a trust-like arrangement." *Pippin* at paragraph two of the syllabus. The escrow agent owes the parties a duty to carry out the terms of the agreement as intended by the parties. *Hurst*, 157 Ohio App.3d 133, 2004-Ohio-2307, 809 N.E.2d 689, at ¶ 40, citing *Pippin*. "[I]f an escrow agent neglects to carry out the instructions of a party to the escrow agreement, liability will result for the damages induced thereby." *Pippin* at 198, 8 OBR 266, 456 N.E.2d 1235, citing 20 Ohio Jurisprudence 2d 215, Escrows, Section 8.

{¶ 33} We recognize that some courts have implied that an escrow does not necessarily have to be shown by writing. See, e.g., *Pippin* at 198, 8 OBR 266, 456 N.E.2d 1235 (an escrow is a matter of agreement, "usually" shown by a writing); see also *Waffen*. However, there is no precedent from this court holding that an escrow does not have to be in writing. Therefore, we follow the rule established by the Supreme Court of Ohio in *Squire*, which requires an escrow to be shown by writing. See *Lu Ru Co. v. Westminster Fin. Group* (Jan. 31, 1986), 6th Dist. No. WD–85–29, 1986 WL 1301 (no escrow contract existed and therefore the title company owed no fiduciary duty to the seller).

{¶ 34} Therefore, as it is undisputed that there was no separate written escrow agreement in the real estate transaction, we look only to the purchase agreement for the duties owed by Zuzolo. That agreement provided only for the earnest money of $10,000 to be paid to "American Title Service, Chris Zuzolo, attorney" within ten days of acceptance and for the fund to be deposited in a trust account.

{¶ 35} Thus, the trial court was correct in determining that the only fiduciary duty owed by Zuzolo as a representative of ATS to Spalla was to timely inform him of a nonpayment of the earnest money due to insufficient funds.

{¶ 36} **Damages**

{¶ 37} Had Zuzolo timely disclosed to Spalla a lack of payment of earnest money by the buyer, Spalla could have declared the buyer in breach of the purchase agreement and made immediate efforts to collect the amount of $10,000 from her. Therefore, the court properly decided the case could proceed against Zuzolo as to the $10,000 earnest money for the breach-of-fiduciary-duty claim.

{¶ 38} Spalla did not present evidence to demonstrate that the nondisclosure caused damages *beyond* the earnest money. Spalla maintains that if he had known of the insufficient funds, he would have withdrawn from the purchase agreement and returned the house to the market earlier. However, he failed to present any evidence to demonstrate that if he had relisted the property sooner, he would have sold the property for more than the contract price of $695,000. The record reflects the property received only two offers during the two years it was listed—one from Fransen and one from the eventual buyers. In fact, as the trial court found, Spalla admitted that he had presented no evidence to show that the property would have actually sold at all if it was returned to the market during the pendency of the Fransen transaction.

{¶ 39} Additionally, the contract permitted Spalla to consider other offers if presented, and the buyer would then have the right to "waive the financing condition and proceed."

{¶ 40} **Other Claims**

{¶ 41} Spalla cannot recover under his claims of third-party legal malpractice, fraud, and civil conspiracy for the same reason. Regardless whether he could successfully establish the essential elements of these claims, he failed to present any evidence of *damages* caused by Zuzolo's failure to disclose. Under these circumstances, the trial court properly granted summary judgment in favor of the defendants regarding these claims.[2]

{¶ 42} Because no genuine issue of material fact remains for trial, the court properly granted summary judgment in favor of the defendants regarding the third-party-malpractice, fraud, and civil-fraud claims and limited Spalla's damages regarding the breach of fiduciary-duty claim to $10,000.

{¶ 43} **Setoff**

{¶ 44} The trial court also found that the title company, ATS, was jointly liable for the breach-of-fiduciary-duty claim. Because the settlement of $28,500

---

2. We note additionally that when the legal-malpractice claim cannot be successfully maintained against Zuzolo, it cannot be maintained against his law firm. See *Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939 (a law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice).

ATS paid to Spalla exceeded his damages of $10,000 for the breach-of-fiduciary-duty claim, Spalla had been fully compensated for the claim and a setoff would be proper.

{¶ 45} Pursuant to R.C. 2307.28(A), a release reduces the claim against the other tortfeasors by the amount of the consideration paid in exchange for the release. A person is liable in tort when he or she acted tortiously and thereby caused harm; the determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself. *Fidelholtz v. Peller*, 81 Ohio St.3d 197, 203, 690 N.E.2d 502. Here, Spalla asserted a breach-of-fiduciary-duty claim against both ATS and the Zuzolo entities. Because the court found them jointly liable, a setoff is proper.

{¶ 46} Moreover, in light of our affirmance of the trial court's award of damages to Spalla in *Spalla*, 2010-Ohio-3460, Spalla is fully compensated for the benefit of his bargain in this real estate matter and should not be entitled to a windfall. The trial court properly limited his recovery.

{¶ 47} For the foregoing reasons, we overrule Spalla's first and second assignments of error. The judgment of the Geauga County Court of Common Pleas is affirmed.

Judgment affirmed.

WESTCOTT RICE, J., concurs.

CANNON, J., concurs in judgment only.

TIMOTHY P. CANNON, Judge, concurring in judgment only.

{¶ 48} I respectfully concur in the ultimate judgment of the majority, affirming the summary judgment entered by the trial court. However, I write separately with regard to one aspect of the analysis.

{¶ 49} The trial court originally found that appellees were not entitled to summary judgment on appellants' breach-of-fiduciary-duty claim. However, the trial court reconsidered its prior entry and entered summary judgment in favor of appellees on all counts. Specifically, the trial court concluded that, as a result of appellants' settlement with American Title Services, Inc., they were not entitled to any additional compensation from appellees on their breach-of-fiduciary-duty claim. I agree with the trial court.

{¶ 50} Appellants have not set forth any evidence that they are entitled to more than the $28,500 they have already received in relation to their breach-of-fiduciary-duty claim. Thus, appellees are entitled to judgment as a matter of law, and the trial court properly granted summary judgment to appellees on all issues. The majority's analysis whether appellees may have owed a fiduciary duty to

appellants is extraneous, because those who may have owed a fiduciary duty to appellants, i.e. the title company and officers, are no longer parties to the case. The only parties remaining are the attorney and the law firm, who did not owe a fiduciary duty to appellants at any time.