**IN RE: Daniel E. STEVENS, Jr. and Mara J. Stevens, Debtors.**

**Daniel E. Stevens, Jr. and Mara J. Stevens, Plaintiffs,**

v.

**SunTrust Mortgage, Inc., Defendant.**

**CASE NUMBER 14–41709
ADVERSARY NUMBER 14–4059**

United States Bankruptcy Court, N.D. Ohio.

Signed February 5, 2015

Patrick B. Duricy, Ashley R. Hall, Philip D. Zuzolo, Zuzolo Law Office, LLC, Niles, OH, for Plaintiffs.

James W. Sandy, McGlinchey Stafford, Cleveland, OH, Gregory A. Stout, Cincinnati, OH, for Defendant.

## MEMORANDUM OPINION REGARDING MOTION TO DISMISS

Kay Woods, United States Bankruptcy Judge

This cause is before the Court on Motion to Dismiss (Doc. 5) filed by Defendant

SunTrust Mortgage, Inc. ("SunTrust") on December 3, 2014. SunTrust requests dismissal of this adversary proceeding on the basis that Debtors/Plaintiffs Daniel E. Stevens, Jr. and Mara J. Stevens have failed to state a claim upon which relief can be granted because SunTrust's claim may not be modified pursuant to 11 U.S.C. § 1322(b)(2). On December 17, 2014, the Debtors filed Response in Opposition to Defendant's Motion to Dismiss (Doc. 8). On January 6, 2015, SunTrust timely filed Reply in Support of Motion to Dismiss (Doc. 13). Having reviewed all the pleadings and for the reasons set forth herein, the Court will deny the Motion to Dismiss.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 2012–7 entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. BACKGROUND

### A. Main Case

On August 18, 2014, the Debtors filed a voluntary petition pursuant to chapter 13 of the Bankruptcy Code, which was denominated Case No. 14–41709 ("Main Case"). On that same date, the Debtors filed Chapter 13 Plan (Main Case, Doc. 2), which proposed to bifurcate SunTrust's claim into a secured claim of $63,000.00 payable with 5.25% interest and an unsecured claim of $85,493.00. (Plan, Art. 2(F).)

On September 17, 2014, SunTrust filed Objection to Chapter 13 Plan (Main Case, Doc. 19), in which it argued that the Debtors were impermissibly seeking to cram down debt secured only by the Debtors' principal residence located at 1422 Keefer Road, Girard, Ohio 44420 ("Property"). On October 27, 2014, the Court entered Agreed Order Resolving Objection to Confirmation (Main Case, Doc. 23), which directed the Debtors to file an adversary proceeding to determine if SunTrust's claim may be modified. The Debtors' Chapter 13 Plan was confirmed on October 29, 2014 (Main Case, Doc. 24); provided, however, that this proceeding would resolve whether SunTrust's claim may be modified.

On October 7, 2014, SunTrust filed a proof of claim denominated Claim No. 3–1,[1] in which it asserts that its claim in the amount of $199,718.46 is fully secured by the Property. Attached to Claim No. 3–1 are the Note, Allonge, Mortgage[2] and Assignment of Mortgage (collectively, "Mortgage") documenting SunTrust's security interest in the Property.[3]

The granting clause of the Mortgage conveys to SunTrust a security interest in the Property, together with "all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property." (Mortg. at 1–2.) Paragraph 2 of the "Uniform Covenants" section of the Mortgage conveys to SunTrust a security interest in "Escrow Funds," which are generally defined as sums to be paid by the Debtors to SunTrust for real estate taxes, leasehold

---

1. Claim No. 3–1 and the attachments thereto are attached to the Motion to Dismiss as Exhibit A.

2. The Mortgage itself is located at pages 11 through 20 of Claim No. 3–1.

3. The Mortgage was assigned from First Union Banc Corp. to SunTrust on November 30, 2012. (Claim No. 3–1 at 21–22.)

payments and hazard insurance. This paragraph also sets forth the parties' obligations with respect to the escrow funds and states:

> The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).[4]

(*Id.* ¶ 2 (emphasis added).)

## B. Disputed Bankruptcy Code Provisions

Prior to addressing the parties' arguments, it is prudent to set forth the Bankruptcy Code provisions at issue in this proceeding. The ultimate question before the Court is whether SunTrust's secured claim may be modified pursuant to § 1322(b)(2), which states:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> * * *
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b)(2) (2015) (emphasis added). The portion of § 1322(b)(2) underlined above is commonly referred to as the anti-modification provision and is the basis of the parties' dispute.

The Bankruptcy Code does not define "real property," but it does define "debtor's principal residence" as "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property[.]" 11 U.S.C. § 101(13A) (emphasis added). The term "incidental property" is defined, "with respect to a debtor's principal residence," as follows:

> (A) property commonly conveyed with a principal residence in the area where the real property is located;
>
> (B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
>
> (C) all replacements or additions.

11 U.S.C. § 101(27B) (emphasis added).

## C. Adversary Proceeding

In accordance with the Agreed Order Resolving Objection to Confirmation, on November 3, 2014, the Debtors filed Complaint (Doc. 1). The Debtors assert that the Property "includes two (2) parcels, one

---

4. Paragraph 2 of the Mortgage defines items (a), (b) and (c)—*i.e.*, the "Escrow Funds"—as follows:

> Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4.

(Mortg. ¶ 2.) Paragraph 4 requires the Debtors to "insure all improvements on the Property ... against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance." (*Id.* ¶ 4.)

known as parcel number 12–222300," where the Debtors' principal residence is located ("Residence"), and "the other known as parcel number 12–410300," which is an "empty lot." (Compl. ¶¶ 8–9.) The Debtors state that, in addition to the Residence, the Mortgage is secured by (i) the empty parcel of real property; and (ii) "personal property of the debtors, in that the mortgage pledges the escrow funds as additional security." (*Id.* ¶ 10.) The Debtors contend that, because the Mortgage is not secured only by real property that is the Debtors' principal residence, the anti-modification provision in § 1322(b)(2) does not apply to SunTrust's claim. As a result, the Debtors argue that SunTrust's claim may be bifurcated into a secured claim and an unsecured claim.

In its Motion to Dismiss, SunTrust first argues that, because the Bankruptcy Code defines debtor's principal residence to include incidental property and incidental property to include escrow funds, a security interest in escrow funds does not remove a claim from the protections of the anti-modification provision in § 1322(b)(2). In the alternative, SunTrust argues that escrow funds do not constitute additional security distinct from real property because escrow funds are incidental benefits "inextricably bound to the real property itself as part of the possessory bundle of rights." (Mot. to Dismiss at 2 (citing *Kreitzer v. Household Realty Corp. (In re Kreitzer)*, 489 B.R. 698, 704 (Bankr. S.D. Ohio 2013)).) In the Motion to Dismiss,

SunTrust does not address the Debtors' argument that the Mortgage is secured by the empty parcel of real property.

In the Response, the Debtors do not dispute that escrow funds come within the definition of incidental property included within the definition of debtor's principal residence in the Bankruptcy Code. However, the Debtors contend that, pursuant to § 1322(b)(2), the security must be both real property and a debtor's principal residence for the anti-modification provision to apply. The Debtors assert that escrow funds are not real property pursuant to Ohio law and, thus, the definition of debtor's principal residence in the Bankruptcy Code does not determine whether the anti-modification provision applies here. Specifically, the Debtors argue that escrow funds do not constitute real property for purposes of § 1322(b)(2) because they are not (i) incidental benefits bound to real property so as to transfer to a grantee of the real property; or (ii) a contingent security interest. Finally, the Debtors state that dismissal is precluded because SunTrust fails to address the argument that the Mortgage is secured by the empty parcel of real property that is not part of the Debtors' Residence.[5]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6), incorporated by Federal Rule of Bankruptcy Procedure 7012(b), allows a defendant to move for dismissal of a complaint that

---

5. In its Reply, SunTrust admits that it fails to address the empty parcel of real property in the Motion to Dismiss, but belatedly attempts to argue for dismissal regarding the empty parcel. SunTrust asserts that (i) the Debtors only list one item of real property in their Schedules; and (ii) the omission of the empty parcel from the Debtors' Schedules indicates that the Debtors consider both parcels of real property to constitute their residence. SunTrust has not only raised this argument in a

procedurally incorrect fashion by omitting it from the Motion to Dismiss, but the argument itself fails to accept as true the factual allegations regarding the empty parcel contained in the Complaint. Based on the incorrect procedural posture of SunTrust's argument concerning the empty parcel as security for the Mortgage, the Court will not address this issue. As a consequence, SunTrust has actually filed a motion for partial dismissal of the Complaint.

fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6) (2015). The motion to dismiss will be denied if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Thus, "to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted).

When evaluating a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009) (quotation marks and citation omitted). However, "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (quotation marks and citation omitted).

### III. ANALYSIS

The Debtors' Complaint alleges that the anti-modification provision in § 1322(b)(2) does not apply to SunTrust's claim because the Mortgage is secured by the empty parcel and personal property in the form of escrow funds. SunTrust does not address the issue of the empty parcel in the Motion to Dismiss, but instead focuses only on the escrow funds. In order to prevail on dismissal of the portion of the Complaint concerning escrow funds, SunTrust must establish that escrow funds come within the purview of the anti-modification provision. SunTrust argues that its claim cannot be modified because (i) the Bankruptcy Code includes escrow funds in the definition of incidental property that qualifies as a debtor's principal residence; and (ii) escrow funds are incidental benefits inextricably· bound to real property and, thus, do not constitute additional security apart from the real property.

### A. Section 1322(b)(2)

██ Section 1322(b)(2) prohibits modification of SunTrust's claim if it is secured "only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). Circuit Courts of Appeals, including the Sixth Circuit, have held that the plain language of § 1322(b)(2) requires the security to be both real property and the debtor's principal residence.

> According to the grammatical structure of that clause, "that is the debtor's principal residence" modifies "real property." Therefore, if the claim does not pertain to "real property," it does not matter whether the claim is on a "debtor's principal residence." The provision plainly contains two requirements: that the property be real property and that it be the debtor's principal residence.

*Reinhardt v. Vanderbilt Mortg. & Fin., Inc. (In re Reinhardt)*, 563 F.3d 558, 562 (6th Cir. 2009) (emphasis added); *see also Ennis v. Green Tree Servicing, LLC (In re Ennis)*, 558 F.3d 343, 345–46 (4th Cir. 2009) ("The prohibition against modification in § 1322(b)(2) has two distinct requirements: first, the security interest must be in real property, and second, the

real property must be the debtor's principal residence.").

SunTrust does not dispute that the Mortgage grants it a security interest in escrow funds, and the Debtors do not dispute that escrow funds are included in the Bankruptcy Code's definition of debtor's principal residence. However, as the Sixth Circuit Court of Appeals has held, "no matter how broad the definition of 'debtor's principal residence,' it still must also be 'real property' for the anti-modification provision to apply." *In re Reinhardt*, 563 F.3d at 563. Thus, this Court must decide if escrow funds are real property. Because the Bankruptcy Code does not define real property, the Court must determine if escrow funds constitute real property under Ohio law. *Id.* at 563–64 (citations and parenthetical omitted) ("[B]oth before and after the enactment of BAPCPA, bankruptcy courts in this circuit, recognizing that the Code does not define 'real property,' have looked to state law . . . .").

## B. Cases Cited by SunTrust

The cases cited by SunTrust do not support its argument that escrow funds constitute real property; in fact, none of these cases even discuss whether escrow funds are real property.

SunTrust cites *Allied Credit Corp. v. Davis (In re Davis)*, 989 F.2d 208 (6th Cir. 1993), for the proposition that escrow funds are incidental to real property and, thus, do not constitute additional security for purposes of § 1322(b)(2). However, the *Davis* court discussed hazard insurance and "rents, royalties, profits, and fixtures," rather than escrow funds. *Id.* at 209–10. Regarding the mortgage's requirement that the borrower obtain hazard insurance payable to the lender, the Sixth Circuit Court of Appeals found that the lender's interest in hazard insurance was "merely a contingent interest—an interest that [was]

irrelevant until the occurrence of some triggering event and not an additional security interest for purposes of § 1322(b)(2)." *Id.* at 211 (citing *RTC v. Washington (In re Washington)*, 967 F.2d 173, 174–75 (5th Cir. 1992)). The court further characterized hazard insurance as "an essential protection of the underlying collateral and not . . . *additional* collateral." *Id.* at 212. Regarding rents, royalties, profits and fixtures, the court stated that these benefits were "merely incidental to an interest in real property" because they were "inextricably bound to the real property itself as part of the possessory bundle of rights." *Id.* at 212–13. More importantly, the court found that "incidental benefits [do] not constitute additional security for purposes of § 1322(b)(2)." *Id.* at 212. Finding that the hazard insurance was a contingent interest, rather than additional collateral, and that rents, royalties, profits and fixtures were benefits incidental to real property, the court concluded that the lender's claim was protected by § 1322(b)(2).

A security interest in escrow funds, which are monies paid by a borrower to the lender and held to pay future real estate taxes and insurance premiums, is wholly different from an interest in hazard insurance, which is contingent and dependent upon a triggering event—*e.g.*, the underlying real property is destroyed in a fire. While hazard insurance functions as replacement security to protect the lender if the real property is damaged or destroyed, escrow funds are simply pledged as additional security irrespective of the real property. Furthermore, escrow funds are not inextricably bound to real property as part of the possessory bundle of rights. Escrow funds are neither (i) benefits derived from real property, such as rents, royalties and profits; nor (ii) items permanently affixed to real property and tradi-

tionally defined as real property, such as fixtures. *See In re McCullum,* Case No. 07–54108, 2008 WL 9019930, at *5, 2008 Bankr. LEXIS 2531, at *14 (Bankr. S.D. Ohio Sept. 23, 2008) ("Clearly, fixtures constitute real property under Ohio law."). Accordingly, the holding in *Davis* does not support SunTrust's contention that escrow funds constitute real property.

SunTrust next cites *Kreitzer v. Household Realty Corp. (In re Kreitzer)*, 489 B.R. 698 (Bankr. S.D. Ohio 2013), in which the mortgage granted the lender a security interest in any compensation paid by third parties for misrepresentations regarding the value or condition of the real property. The Bankruptcy Court for the Southern District of Ohio concluded that the lender's claim was not subject to bifurcation pursuant to § 1322(b)(2) because the compensation at issue was a benefit incidental to real property, rather than an additional security interest in personal property. The court stated:

> The proceeds from a cause of action for misrepresentation of the value or condition of the real property that is the subject of a mortgage is not additional security and is the type of "incidental benefit" which the Sixth Circuit found is "inextricably bound to the real property itself as part of the possessory bundle of rights." *Davis*, 989 F.2d [at] 213. It would be illogical to determine that if proceeds used to compensate for the diminishment in the value of property securing a loan as a result of fire or a storm are part of this "bundle of rights," that proceeds used to compensate for value that was misrepresented and upon which that loan was based are not part of that same "bundle of rights." . . . The borrower's agreement to assign such proceeds is not a separate or additional security interest, but merely a provision to protect the lender's security interest in the real property.

> . . . If [the lender] secured the loan with the real estate and a certificate of deposit or an automobile, the certificate of deposit or automobile would serve as additional collateral in addition to the value of the real estate. However, in the case of proceeds from hazard insurance or from a claim for misrepresentation as to the value or condition of the real property, the proceeds replace the value lost in the real estate due to the fire or other damage due to the misrepresentation, rather than serving in addition to the value of the real estate. Thus, the proceeds serve as replacement security, thereby encouraging lenders to loan money based upon the real estate—the stated legislative purpose for the exception.

*Id.* at 705–06.

The proceeds at issue in *Kreitzer* protected the lender's interest in the event the value of the real property was misrepresented and, thus, diminished, much like hazard insurance protects a lender's interest if the real property is damaged or destroyed. Escrow funds, on the other hand, are in no way related to diminishment, damage or destruction of the real property and do not serve the function of replacement security. Accordingly, escrow funds are more akin to a certificate of deposit or automobile pledged as additional security irrespective of the value of the real property.

Likewise, in *Abdosh v. IndyMac Mortgage Corp. (In re Abdosh)*, 513 B.R. 882 (Bankr. D. Md. 2014), the Bankruptcy Court for the District of Maryland found that proceeds paid by third parties, such as insurance and condemnation proceeds, were incidental to real property because "no additional collateral [was] created, as such, payments [were] in substitution of the original damaged or appropriated col-

lateral." *Id.* at 886. Moreover, the court in *Abdosh* expressly ruled that the deed of trust at issue was not secured by escrow funds: "Even if the court were to find that the Deed of Trust included the escrow as collateral, which it does not, the statute is clear that insurance proceeds and escrows are part and parcel of the Debtors' principal residence." [6] *Id.* (citation omitted).

After stating that escrow funds were not at issue, the court in *Abdosh* simply stated, in dicta, that escrow funds are included as part of a debtor's principal residence, which the Debtors do not dispute. The *Abdosh* opinion does not address whether escrow funds also qualify as real property, as mandated by § 1322(b)(2) and Sixth Circuit precedent.

Finally, SunTrust cites *In re McCullum*, Case No. 07–54108, 2008 WL 9019930, 2008Bankr. LEXIS 2531 (Bankr. S.D. Ohio Sept. 23, 2008).[7] In *McCullum*, the mortgage granted a security interest in "personal property," which the mortgage expressly defined as "equipment, fixtures, and other articles of personal property now or hereafter owned by [the borrower] and now or hereafter attached or affixed to the Real Property." *Id.* 2008 WL 9019930, at \*4, 2008 Bankr. LEXIS 2531, at \*11. The Bankruptcy Court for the Southern District of Ohio stated, "The fact that the personal property must be attached or affixed to the real property suggests that the items would be 'inextricably bound to the real property itself as part of the possessory bundle of rights' similar to a fixture." *Id.* 2008 WL 9019930, at \*4, 2008 Bankr. LEXIS 2531, at \*13. Because fixtures con-

stitute real property under Ohio law, the court concluded that the mortgage could not be modified pursuant to § 1322(b)(2).

As set forth above, none of the cases cited by SunTrust in its Motion to Dismiss analyzed escrow funds in the context of § 1322(b)(2), much less concluded that escrow funds are real property or benefits incidental to real property.

## C. Are Escrow Funds Real Property Under Ohio Law?

■ Because the Bankruptcy Code does not define real property, the Court must look to applicable Ohio law to determine if escrow funds are real property. The court first will look to see if Ohio has a statutory definition of real property that encompasses escrow funds. Title 57 of the Ohio Revised Code defines real property as follows:

> "Real property," "realty," and "land" include land itself, whether laid out in town lots or otherwise, all growing crops, including deciduous and evergreen trees, plants, and shrubs, with all things contained therein, and, unless otherwise specified in this section or section 5701.03 of the Revised Code, all buildings, structures, improvements, and fixtures of whatever kind on the land, and all rights and privileges belonging or appertaining thereto. . . .

O.R.C. § 5701.02(A) (2015). The definition of real property in O.R.C. § 5701.02(A) does not encompass escrow funds; however, this definition only applies to Title 57,

---

6. The escrow funds provision "simply direct[ed] how payments [were] to be applied as they [were] received and [did] not serve to create a security interest." *Abdosh*, 513 B.R. at 886 (quotation marks and citation omitted).

7. SunTrust also cites *In re Rogers*, 500 B.R. 537 (Bankr. W.D. Mich. 2013), in which the Bankruptcy Court for the Western District of

Michigan merely stated, in a footnote, "[T]he Debtor makes no argument that the Mortgage Creditor holds anything but a protected mortgage. The court need not address in detail those types of mortgages which are not subject to the anti-modification provision." *Id.* at 540 n.2 (citations and parentheticals omitted).

which is entitled Taxation. O.R.C. § 5701.02 ("As used in Title LVII [57] of the Revised Code: ....."). Because the issue before the Court does not involve tax law, the above definition of real property is not dispositive. The Ohio Revised Code does not otherwise define real property.

Neither the Ohio Supreme Court nor any other Ohio court has specifically addressed whether escrow funds are real property.

 The accepted definition of "escrow" in Ohio real property law is as follows:

> "An escrow in Ohio, as between grantor and grantee of real estate, is witnessed by a written instrument known as an escrow agreement, delivered by mutual consent of both parties to a third party denominated the depositary or escrow agent, in which instrument certain conditions are imposed by both grantor and grantee, which conditions the depositary or escrow agent, by the acceptance and retention of the escrow agreement, agrees to observe and obey."

*Spalla v. Fransen*, 188 Ohio App.3d 666, 936 N.E.2d 559, 564 (2010) (quoting *Squire v. Branciforti*, 131 Ohio St. 344, 2 N.E.2d 878, syllabus ¶ 1 (1936)). "The depository under an escrow agreement is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands." *Pippin v. Kern–Ward Bldg. Co.*, 8 Ohio App.3d 196, 456 N.E.2d 1235, 1237 (1982) (citing *Squire*, 131 Ohio St. 344, 2 N.E.2d 878) (emphasis added). This definition of an escrow is not applicable here because (i) the Debtors are not transferring real property to a third party; and (ii) the Debtors and a third party have not consented to SunTrust serving as their depository or escrow agent. Instead, the

Debtors and SunTrust have agreed in the Mortgage that SunTrust will act as the Debtors' agent with respect to the payment of real estate taxes, leasehold payments, and hazard insurance premiums. No third party has consented to this arrangement and, ultimately, the Debtors are responsible for these payments.

 It is worth noting that, in the context of escrow funds designated for the purchase of real property, Ohio courts have labeled these funds "purchase money funds." Certainly, escrow funds intended for the purchase of real property are wholly distinct from the real property itself. Similarly, escrow funds designated in a mortgage for the payment of taxes and insurance premiums [8] are wholly distinct from the real property secured by the mortgage.

Thus, neither the Ohio Revised Code nor case law in Ohio supports the proposition that escrow funds are real property. Looking to other jurisdictions, the Court finds persuasive case law holding that, for purposes of § 1322(b)(2), escrow funds are personal property, rather than real property.

The exact provision granting escrow funds as security in this proceeding was at issue in *In re Bradsher*, 427 B.R. 386 (Bankr. M.D.N.C. 2010). The Bankruptcy Court for the Middle District of North Carolina described the escrow provision as follows:

> Here, the ... loan documents do not simply provide for escrow payments for taxes and insurance and the establishment of an escrow account for such payments. Instead, the loan documents require the borrower to pledge the escrow funds as "additional security" for the

---

**8.** While insurance proceeds serve only as replacement collateral, insurance premiums serve as additional collateral. *See* Section III(B), *supra* at 539–43.

principal and interest due under the promissory note and deed of trust.

*Id.* at 389. Interpreting North Carolina law, the court examined the definitions of real property in the General Statutes of North Carolina and noted that those statutes "reflect[ed] the breadth to which the definition of real property ha[d] been expanded in North Carolina." *Id.* at 390. "[E]ven under an expanded definition of real property," the court ultimately concluded that escrow funds were not real property and, thus, the mortgage was subject to modification pursuant to § 1322(b)(2). *Id.* at 391–92. The court stated:

> The escrow provisions do not characterize or describe the rights arising from such provisions as being a component of the land described in the deed of trust or as constituting a right or privilege belonging or appertaining to such land. Nothing in the escrow provisions purports to engraft the escrow account onto the land so as to convert the escrow account into a tenement or hereditament that would be transferred to a grantee of the land. Nor was there any evidence of any custom or usage under which the escrow account would pass with a conveyance of the land. In actuality, the contractual rights possessed by the Debtor can best be described as a chose in action ....[9] This means that the [lender] indebtedness is not secured solely by real estate that is the Debtor's principal residence and thus [the lender]

is outside the protection from modification provided under section 1322(b)(2).

*Id.* at 391–92 (n.3–5 omitted) (emphasis added).

The Bankruptcy Court for the Eastern District of Pennsylvania reached the same conclusion in *Steslow v. Citicorp Mortgage, Inc. (In re Steslow)*, 225 B.R. 883 (Bankr. E.D. Pa. 1998). The mortgage at issue "include[d] as additional security the tax and insurance escrow which consist[ed] of funds and [was] personalty." *Id.* at 885. Concluding that escrow funds were not real property, the court stated:

> Under the escrow system the lender establishes an account for the borrower which is credited when the borrower makes the required real estate tax and insurance payments and debited when the tax or insurance premium is paid by the bank to the appropriate entity. When the property is sold, excess escrow funds are either applied to any outstanding balance on the mortgage or are refunded to the mortgagor. By no stretch of the imagination can these funds be considered "real property". They are personalty required and held by the lender to ensure that the mortgagee's interest is not put at risk should the mortgagor fail to pay required real estate taxes or maintain insurance.

*Id.* at 885–86 (citations and n.4 omitted).[10]

Upon payment in full of the Mortgage, SunTrust is required to return any re-

---

9. Black's Law Dictionary defines "chose in action" as:
> 1. A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort. 2. The right to bring an action to recover a debt, money, or thing. 3. Personal property that one .person owns but another person possesses, the owner being able to regain possession through a lawsuit.

*Black's Law Dictionary*, 294 (10th ed. 2014).

10. No appellate court has directly addressed the issue of whether escrow funds are real property. However, in *Hammond v. Commonwealth Mortgage Corp. (In re Hammond)*, 27 F.3d 52 (3rd Cir. 1994), the Third Circuit Court of Appeals interpreted Pennsylvania law and stated, in dicta: "[C]reditors who demand additional security interests in personalty or escrow accounts and the like pay a price. Their claims become subject to modification. Their recourse, if they wish to avoid

maining escrow funds to the Debtors; thus, it is self-evident that the escrow funds are not inextricably bound to the real property. Furthermore, since the escrow funds would not transfer to any subsequent grantee of the real property, they cannot be considered part of the possessory bundle of rights associated with the real property. No matter how expansive the definition of real property, this Court finds that the Ohio Supreme Court would conclude that escrow funds do not and cannot constitute real property. To the contrary, escrow funds are personal property.

Because SunTrust has taken an additional security interest in the monies paid by the Debtors as escrow funds, the Mortgage is not protected from modification by § 1322(b)(2). As a consequence, the Debtors have stated a claim upon which relief can be granted. The Court will deny SunTrust's Motion to Dismiss.

## IV. CONCLUSION

Pursuant to the plain language of § 1322(b)(2), the anti-modification provision applies to claims secured only by real property that is also the debtor's principal residence. In this proceeding, the security at issue is escrow funds. Unlike hazard insurance payable to the lender or funds paid by a third party for misrepresentation of the real property, escrow funds are not a contingent interest that serves as replacement security if the real property is diminished, damaged, or destroyed. Unlike rents, royalties, and profits, escrow funds are not a benefit derived from the real property that would transfer to a grantee of the real property. Unlike fixtures, escrow funds are not affixed to the real property and have not historically been included in the definition of real property. Instead, escrow funds possess the characteristics of personal property and serve as

modification, is to forego the additional secu-

additional security for the benefit of the lender without regard to the real property. Accordingly, this Court concludes that escrow funds are not real property, as required by § 1322(b)(2). As a result, the Debtors have stated a claim upon which relief can be granted. SunTrust's Motion to Dismiss will be denied.

An appropriate order will follow.

## ORDER DENYING MOTION TO DISMISS

This cause is before the Court on Motion to Dismiss (Doc. 5) filed by Defendant SunTrust Mortgage, Inc. ("SunTrust") on December 3, 2014. SunTrust requests dismissal of this adversary proceeding on the basis that Debtors/Plaintiffs Daniel E. Stevens, Jr. and Mara J. Stevens have failed to state a claim upon which relief can be granted because SunTrust's claim may not be modified pursuant to 11 U.S.C. § 1322(b)(2). On December 17, 2014, the Debtors filed Response in Opposition to Defendant's Motion to Dismiss (Doc. 8). On January 6, 2015, SunTrust timely filed Reply in Support of Motion to Dismiss (Doc. 13). For the reasons set forth in the Court's Memorandum Opinion Regarding Motion to Dismiss entered on this date, the Court hereby:

1. Finds that § 1322(b)(2) permits modification of a claim unless the claim is secured only by real property that is also the debtor's principal residence;

2. Finds that escrow funds pledged as security are not a contingent interest serving as replacement security;

3. Finds that escrow funds are not incidental benefits inextricably bound to real property as part of the possessory bundle of rights associated with the real property;

rity." *Id.* at 57 (citation omitted).

4. Finds that escrow funds are personal property, rather than real property;

5. Finds that, because the Mortgage grants SunTrust a security interest in escrow funds, SunTrust's claim is not secured only by a security interest in real property that is the Debtors' principal residence;

6. Finds that the Debtors have stated a claim upon which relief can be granted; and

7. Denies the Motion to Dismiss.

**IT IS SO ORDERED.**